**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ENT INT'L REALTY CORP., H.P.S.O.N.Y., INC.,
N.Y.A.H., INC., R.C.F.H.P., INC. On behalf
of themselves and all others similarly situated,

PLAINTIFFS,

    -against-

ANDREW CUOMO, in his personal and official capacity as
Governor of the State of New York, BILL De BLASIO in his
personal and official capacity as Mayor of New York City, and
THE NEW YORK CITY DEPARTMENT OF FINANCE,

DEFENDANTS.

Case No. 1:20-cv-4277

**<u>CLASS ACTION
COMPLAINT</u>**

PLAINTIFFS, by and through their undersigned counsel, allege as follows, upon information and belief as against the named DEFENDANTS herein:

## COMPLAINT FOR CIVIL RIGHTS VIOLATIONS AND INJUNCTIVE RELIEF

**Preliminary Statement:**

1.      This action is brought by Representative PLAINTIFFS Ent Int'l Realty Corp.,

H.P.S.O.N.Y., Inc., N.Y.A.H., Inc., and R.C.F.H.P., Inc. under the Constitution of the United

States of America as applied to the States via the Fourteenth Amendment, and 42 U.S.C. § 1983,

for civil rights violations suffered by PLAINTIFFS as a result of the actions of the

DEFENDANTS Andrew Cuomo, Bill de Blasio, New York State, and the New York City

Department of Finance.

2.      New York State Executive Law § 29-a of Article 2(b) authorizes the issuance of

executive orders with all of the authority of a law introduced and enacted through traditional

processes for as long as the executive order remains in effect. Executive orders are subject to the

state constitution, the federal constitution as well as federal statutes and regulations.

3.      The case at bar arises as a result of Governor Cuomo's issuance of Executive

Order 202.8 on March 20, 2020 in response to the *COVID-19 Pandemic* (the "Pandemic"), which

started the moratorium on evictions across the State. This Order was later extended by Executive

Order 202.28 issued in late May (hereinafter the "Orders"). The Order states in part:

> "There shall be no initiation of a proceeding or enforcement of either an eviction of any residential or commercial tenant, for nonpayment of rent or a foreclosure of any residential or commercial mortgage, for nonpayment of such mortgage, owned or rented by someone that is eligible for unemployment insurance or benefits under state or federal law or otherwise facing financial hardship due to the COVID-19 pandemic for a period of sixty days beginning on June 20, 2020."

4.      The Order is a violation of: (i) Substantive Due Process, (ii) Procedural Due

Process, (iii) the Contract Clause contained in Article I, Section 10, Clause I of the United States

Constitution, and (iv) constitutes Regulatory Taking in violation of the Fifth Amendment, which applies to state and local government DEFENDANTS herein via the Fourteenth Amendment Due Process Clause.

5.      The Governor's response to the Pandemic has been exemplary given the sudden and dire ramifications faced by the State and its Citizens. However, he totally forgot about and left out thousands of property owners, whom are the backbone of New York's economy, without any sort of property tax relief in sight. The Order, while protecting tenants, falls short in that it penalizes property owners whose quarterly taxes remain due even though collected rents have reached historically low levels across all rental categories in the State and City of New York.

6.      Property owners are affected to the same degree as their tenants and should be afforded protections by the DEFENDANTS, to the same degree. Unfortunately, that is not the case which brings rise to this lawsuit.

7.      PLAINTIFFS and other property owners will be irreparably harmed if they are forced to remit tax payments as currently scheduled. The harm will not be reversible through secondary legal processes and therefore requires a permanent injunction preventing the collection of property taxes, and late fees, costs or related expenses until such time that the affected property owners, like PLAINTIFFS have been afforded the opportunity to rebuild their capital through the collection of rents.

**JURISDICTION AND VENUE**

8.      Jurisdiction is proper in this venue pursuant to 28 U.S.C. § 1331, 28 U.S.C. §§

2201-2202, and 42 U.S.C. § 1983, and the awarding of counsel fees pursuant to 42 U.S.C. § 1988

(b) and Rule 23 of the Federal Rules of Civil Procedure.

9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 given that the

properties underlying the taxes that are central to this action are located in this District.

**PARTIES**

10.      Representative Plaintiff Ent Int'l Realty Corp. (hereinafter "ENT") is a corporation

and real estate owner domiciled and operating in New York City, with its property located at: 139

Fulton St. (a/k/a 93-99 Nassau Street) New York, NY.

11.      Representative Plaintiff H.P.S.O.N.Y., Inc. (hereinafter "HPS") is a corporation

and real estate owner domiciled and operating in New York City, with its property located at:

1370 York Avenue, New York, NY.

12.      Representative Plaintiff N.Y.A.H., Inc. (hereinafter "NYA") is a corporation and

real estate owners domiciled and operating in New York City, with its property located at: 1372

York Avenue (a/k/a/ 501 E. 73rd Street) New York, NY.

13.      Representative Plaintiff R.C.F.H.P., Inc. (hereinafter "RCF") is a corporation and

real estate owner domiciled and operating in New York City, with its property located at 1374

York Avenue, New York, NY.

14.      ENT, HPS, NYA, and RCF are collectively referred to as the "PLAINTIFFS"

and/or the "REPRESENTATIVE PLAINTIFFS".

15.      Defendant Andrew Cuomo (hereinafter "Cuomo" or the "Governor") is the current

Governor of the State of New York and the individual who issued and signed the Order at issue in

this case. Cuomo is being sued in his official capacity exclusively.

16.     Defendant Bill De Blasio (hereinafter "De Blasio" or the "Mayor") is the current Mayor of New York City and the individual who directly manages and supervises the activities of Defendant New York City Department of Finance.

17.     Defendant New York City Department of Finance (hereinafter "NYCDOF") is a sub-division of the City of New York tasked with the tracking and collection of various forms of taxes, including property taxes.

18.     Cuomo, De Blasio and NYCDOF are hereinafter referred to as the "DEEFENDANTS".

## BACKGROUND

## I.     A BREIF TIMELINE OF THE SPREAD OF THE PANDEMIC IN NEW YOUK

19.     On March 1, 2020, the State of New York confirmed its first case of Covid-19. On March 2nd, Cuomo issued a mandate that required insurers to waive cost sharing associated with testing for the COVID-19 virus. On March 3rd, Cuomo signed a $40 million emergency management authorization for the State's virus response which granted the Governor broad powers to use directives and executive orders.

20.     On March 7th, Cuomo issued the first of several COVID-19 related executive orders when he declared a State of Emergency. On March 11th, the Governor, by executive order closed all New York City public schools.

21.     On March 14th, the State confirmed its first (2) COVID-19 related death and 613 positive cases. Cuomo issued an executive order modifying election procedures to suspend the candidate petitioning process for the June primary elections.

22.     On March 16th, Cuomo issues an executive order that closed all schools statewide and in partnership with the Governor of New Jersey issued the first of several executive orders

that implemented "Social Distancing" protocols across New York and New Jersey. This order also closed all in store dining, bars, movie theaters and casinos.

23.     On March 20th, the State passed 7,102 confirmed cases and 46 total deaths. Cuomo signed an executive order titled "Pause" which closed all "non-essential businesses" statewide. The Pause order also banned all nonessential gatherings of any size, implemented social distancing of 6 feet or more and banned all contact recreational activities.

24.     The Pause order also established a 90-day moratorium on any residential or commercial evictions.

25.     By March 29th, the State had reached 59,513 confirmed COVID-19 cases and 981 virus related deaths. Hospitals were quickly becoming overrun. Cuomo extended the Pause order.

26.     By April 13th, the State had at least 195,031 confirmed COVID cases and 10,072 confirmed deaths. The State along with the states of New Jersey, Connecticut, Pennsylvania, Delaware, Massachusetts and Rhode Island announced a seven-state council to restore the economy and get citizens back to work.

27.     As of May 28th, the State has confirmed more than 343,000 COVID cases and 27,641 deaths. Cuomo also extended Executive Order 202.28 until at least June 13th. Most multi-property owners in the State will suffer through significantly reduced rent for a longer period because New York City did not enter Phase I of its reopening process. Since January, the Governor has issued (25) executive orders and changed 262 State laws in response to the Pandemic.

## II.     ECONOMIC IMPACT OF COVID ON THE STATE'S FINANCES

28.     At the beginning of May 2020, the Governor released a 463-page document through the State's budget division titled, "*FY 2021 Enacted Budget Financial Plan*" (the "Plan").

29.     The Plan illustrates the States tumbling economy because of the Stay Home Orders. The Plan shows that as of May 1st, sales taxes were down nearly 20%, lottery is down 21% and gaming is down 34%.

30.     The Plan goes on to state that income taxes are down 14%, business taxes are down 10%, and video lottery revenues are down 41%.

31.     In the Plan, the Governor estimates that the State may be forced to slash as much up to $8.2 billion to localities and that it may take until January 2023 for the State's finances to return to pe-Pandemic conditions.

32.     The State estimates that it will have capital shortfalls of $7.5 billion, $9.3 billion, and $8.8 billion in fiscal years 2022, 2023 and 2024 respectively.

33.     With New York businesses closed, the State's revenues mirror the finances of most of the State's citizens.

### III.     PROTECTIONS IMPLEMENTED BY THE STATE FOR RENTERS AND SOME PROPERTY OWNERS

34.     The Governor implemented a moratorium on evictions that is currently set to expire in mid-August. As it stands, Landlords cannot evict tenants for nonpayment, however once the Order is lifted, landlords will be able to pursue evictions.

35.     State legislators are working towards a rent freeze that would defer renter's payments once the Pandemic is over, permitting either a standardized repayment plan or forgiveness of past due rents.

36.     The Governor implemented a moratorium on mortgage payments throughout the State but has stated publicly that he currently believes that the eviction moratorium is enough protection for renters.

37.     The New York City Department of Finance implemented several programs to assist property owners facing hardships in making their property tax payments. These programs include exemption programs to lower the amount of taxes owed, standard payment plan options as well as the new Property Tax and Interest Deferral (PT AID) program, for those who qualify.

38.     Specifically, the New York City Department of Finance is offering "*Extenuating Circumstances Income-Based Plan*", and "*Fixed-Term Income-Based Plan*" *(*the "relief Programs")*. Each of the Relief Programs affords qualified property owners much needed relief.

39.     The Relief Programs' eligibility criteria states in part:

> "The property must be a one- to three-unit tax class 1 residential property, or a condominium. The property must have been the applicant's primary residence for at least one year. Applicants must have a federal adjusted gross income (AGI) of $58,399 or less. Applicants must be able to document an extenuating circumstance such as the death or serious illness of a property's owner or immediate family member, loss of income."

40.     The PLAINTIFFS and thousands of other property owners throughout New York do not qualify for any of the programs that are offered even though they have suffered the most losses.

41.     The Governor, the Mayor and the State have created a nightmare scenario in which both commercial and residential tenants do not have to pay rent, while PLAINTIFFS continue to be responsible for the payment of taxes and late fees. PLAINTIFFS legal remedies have been stripped through the issuance of executive orders, and only small property owners qualify for the available financial assistance programs. The DEFENDANTS have not provided any explanation or criteria for the "Financial Hardship" requirement for tenants to qualify for the exemption from eviction, which has led to all tenants believing they qualify. Without any criteria or checks in place, essentially every commercial and residential tenant qualifies. The forgoing is a loose cannon and a recipe for disaster.

42.     The DEFENDANTS have turned a blind eye to the thousands of New York City property owners/taxpayers who are the victims, such as the PLAINTIFFS.

**IV.     DECLINING RENT COLLECTIONS**

43.     The Community Housing Improvement Program found that in May 2020 residential rent collection in New York state was down 20% from historical average rent collection in the month of May and that commercial rent collection was down 60%.

44.     In an April 2020, a State funded survey of 100,000 units revealed that 25% of the units had not paid rent in more than 2 months. The survey showed that this percentage is slightly higher for **larger property** owners and lower for smaller property owners.

45.     The State's Executive Director, Jay Martin noted that "there are hundreds of buildings in New York that are operating at a loss because of COVID-19, and many of them will not survive another month without assistance. For multi-family landlords who subsidized the smaller amount of money generated by their rent stabilized units with commercial property rent, the decrease in revenue is devastating.

46.     As of the end of April, the Representative PLAINTIFFS have experienced dramatic delinquencies because of reduced rent collections. The PLAINTIFFS have rent delinquencies of $258,178, $11,759, $36,688, and $42,852, respectively.

47.     The Representative PLAINTIFFS and others who are similarly situated are trapped in a worsening economic nightmare as July 1st taxes bills are approaching. The PLAINTIFFS require and deserve assistance just like other citizens and businesses have received or many will lose their properties.

48.     On May 8, 2020, PLAINTIFFS' Attorney wrote a letter via email and First-Class Mail to DEFENDANTS De Blasio and NYCDOF, respectively, in which he requested relief from the upcoming July taxes. PLAINTIFFS' attorney attached records in support of his request. The

response that he received as an email with a link to various programs that are only open to one-to

three-family home and condominium owners who have fallen behind on their property tax

payments.

49.     Defendant NYCDOF issued a memo on March 24, 2020 which was linked to

PLAINTIFFS' attorney in response to his request for relief. The memo states in relevant part:

> "The Department of Finance administers several benefits in the form of tax
> exemptions, abatements, and money-saving programs. Exemptions lower
> the amount of tax owed by reducing a property's assessed value.
> Abatements reduce taxes by applying credits to the amount of taxes owed.
> Exemptions administered by DOF include the Coop & Condo Abatement
> for qualifying property owners, as well as a number of programs for
> seniors, disabled and veterans."

The memo goes on to define the criteria for qualification as:

> "The property must be a one-to three-unit tax class 1 residential property,
> or a condominium. The property must have been the applicant's primary
> residence for at least one year. o Applicants must have a federal adjusted
> gross income (AGI) of $58,399 or less. Applicants must be able to
> document an extenuating circumstance such as the death or serious illness
> of a property's owner or immediate family member, loss of income, or
> enrollment in the Department of Environmental Protection's Water Debt
> Assistance Program."

The Criteria for relief specifically disqualify PLAINTIFFS and those who are similarly situated
from any of the relief programs offered by NYCDOF, leaving these property owners out in the
cold.

50.     Then, to make matters even worse for the CLASS, on May 28, 2020, Defendant

De Blasio, signed a bill into law, Int. No. 1932-A, amending the New York City Administrative

Code to prohibit enforcement of personal liability against natural persons for certain commercial

leases. Int. No. 1932-A is intended to protect guarantors of restaurant, bar and other non-essential

retail leases for businesses that were forced to close under the aforementioned executive orders

issued Defendant Cuomo.

51.     This bill is problematic to the PLAINTIFFS and the CLASS because it further tells commercial tenants and their guarantors that they can remain in possession of the rented premises without having to pay rent, whether they can afford it or not.

## CLASS ACTION ALLEGATIONS

52.     PLAINTIFFS seek Class Action Certification pursuant to Fed. R. Civ. P. 23

**Proposed Plaintiff Class**

53.     PLAINTIFFS bring this action individually and on behalf of those similarly situated *i.e.,* property owners throughout the State and the City of New York who have been economically impacted by the various ongoing Orders which have caused rent collections to decline to near inoperable levels with no relief in sight.

**Numerosity**

54.     Members of the Plaintiff class are so numerous that joinder of all members is impactable.

55.     The exact number of class members is unknown to the Representative PLAINTIFFS currently. There are thousands of property owners who are similarly situated to the Representative Plaintiff.

56.     It would be impractical to join the Plaintiff Class members individually and there is no need for this Court to do so in order to grant the relief sought in this action.

**Common Questions of Law**

57.     Common questions of law and fact exists as to all members of the Plaintiff Class and prevail over any questions solely affecting individual members of the Plaintiff Class.

58.     Such common questions of law are the constitutionality of the Orders and moratoriums issued and imposed by the Governor and the State, the collection of taxes by  the

New York City Department of Finance without regard for the imposition caused by the Order and moratoriums imposed, whether the Plaintiff Class is entitled to declaratory and/or injunctive relief, compensatory, general, and/or punitive damages.

**Typicality**

59.     The Causes of Action, facts, and claims being brought by the Representative PLAINTIFFS are typical and common to the claims of all members of the Plaintiff Class.

**Adequacy**

60.     PLAINTIFFS' Class will be fairly and adequately represented by Representative PLAINTIFFS.

61.     Representative PLAINTIFFS are interested in pursuing this matter to completion with the intent on a proper and fair outcome for all others similarly situated.

62.     Representative PLAINTIFFS have retained competent and experienced attorneys to represent the interests of the Plaintiff Class.

63.     Representative PLAINTIFFS hold no adverse interest or conflict with any member of the Plaintiff Class entitled to relief sought herein.

64.     Counsel who has been selected by the Representative PLAINTIFFS has no interest to or in conflict with that of any individual who might be entitled to the relief sought herein.

**Superiority**

65.     A class action is superior to all other available methods as it will ensure fair and efficient adjudication of this matter.

66.     Counsel and Representative PLAINTIFFS are not aware of any difficulty that would prevent proper management of this action or maintenance of a Class Action.

**Alternate Class Certification Pursuant to F R. Civ. P. 23(B) and/or 23(c)**

67.     Prosecution of similar actions separate from this matter, by individual members of the Plaintiff Class create a risk of inconsistent or varying adjudication with respect to individual Class members and may create incompatible guidelines and law for DEFENDANTS.

68.     The prosecution of separate actions by individual Class members would create a risk of decisions that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or would substantially impair or impede their ability to protect their interests.

69.     DEFENDANTS acted on grounds generally applicable to the Plaintiff Class, thereby making appropriate final declaratory and injunctive relief with respect to the members of the Plaintiff Class as a whole.

70.     All of Plaintiff Class have claims and issues of commonality that should result in certification pursuant to Rule 23(c)(4).

## FIRST CAUSE OF ACTION
### Violation of the Fourteenth Amendment Procedural Due Process Clause and the Awarding of Attorney's Fees Pursuant to 42 U.S.C. 1988(b)

71.     PLAINTIFFS repeat and re-allege by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

72.     The PLAINTIFFS assert that DEFENDANTS have engaged in behavior that violated the right to Procedural Due Process.

73.     DEFENDANTS' actions have deprived the PLAINTIFFS of its right property rights, specifically their right to compensation. Procedural Due Process affords the rights to notice and a hearing when the state deprives an individual of fundamental property rights.

74.     No remedies or hearings of any kind are available to the PLAINTIFFS to address the loss of compensation. No end of the losses is in sight.

75.     Under the Due Process Clauses of the Fifth and Fourteenth Amendments, " no person may be deprived of life, liberty, or property without reasonable notice and an opportunity to be heard." *Karpova v. Snow*, 497 F.3d 262, 270 (2d Cir. 2007).

76.     The  Governor's  issuance of the Order(s) and the underlying moratoriums on eviction coupled with the State, The City of New York and the New York City Department of Finance's taxation of the property owners that have been deprived of income as a result of the Orders, have created an irreparable economic loss that is ongoing.

77.     By simply reassessing the overall protections afforded to the citizens and ensuring that all property owners are included, the DEFENDANTS will have remedied this situation. If the PLAINTIFFS are forced to do the impossible, which is to remit timely tax payments on July 1st as scheduled, PLAINTIFFS will be in default and fall into further disrepair as well as other significant problems associated with the loss of revenue.

78.     By virtue of the above and the violation of PLAINTIFFS' constitutional rights, PLAINTIFFS have and will yet suffer irreparable harm, entitling PLAINTIFFS to declaratory and injunctive relief and damages including an award of counsel fees.

### SECOND CAUSE OF ACTION
**Violation of the Fourteenth Amendment Substantive Due Process Clause and the Awarding of Attorney's Fees Pursuant to 42 U.S.C. 1988(b)**

79.     PLAINTIFFS repeat and re-allege by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

80.     The PLAINTIFFS assert that DEFENDANTS have engaged in behavior that violated the right to Substantive Due Process. This substantive guarantee is intended to preclude state and local governments from engaging in conduct that deprives individuals of life, liberty and property.

81.     DEFENDANTS' actions have deprived the PLAINTIFFS of their property rights, specifically their right to compensation.

82.     DEFENDANTS' aforementioned actions and inactions violates substantive due process by so severely depriving the class of its property rights, while mandating the PLAINTIFFS to stay current on property tax payments without offering any sort of relief whatsoever.

83.     Forcing the PLAINTIFFS to pay property taxes by July 1, 2020, while essentially telling all residential and commercial tenants that they do not have to pay rent, until at least August 20, 2020, is unconstitutionally arbitrary and does not serve any legitimate state interest.

84.     By virtue of the above and the violation of PLAINTIFFS' constitutional rights, PLAINTIFFS have and will yet suffer irreparable harm, entitling PLAINTIFFS to declaratory and injunctive relief and damages including an award of counsel fees.

### THIRD CAUSE OF ACTION
**Violation of the Fourteenth Amendment Equal Protection Clause and the Awarding of Attorney's Fees Pursuant to 42 U.S.C. 1988(b)**

85.     PLAINTIFFS repeat and reallege by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

86. The PLAINTIFFS assert that DEFENDANTS have engaged in behavior that violated the right to Equal Protection pursuant to the Fourteenth Amendment.

87.     DEFENDANTS' actions have deprived the PLAINTIFFS of their property rights, and to provide protections that are afforded other property owners.

88.     This Court has held that ""' The equal protection clause directs state actors to treat similarly situated people alike. To prove an equal protection violation, claimants must prove purposeful discrimination, directed at an identifiable or suspect class." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (citations omitted). In other words, " [t]o prove a violation of the

Equal Protection Clause . . . a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination."

89.     In the current case, only those property owners with one-to three-family homes and condos were made eligible for tax relief programs implemented by the DEFENDANTS. However, PLAINTIFFS and all other similarly situated have been excluded. This exclusion is intentional as shown in the Memo issued by Defendant NYCDOF where the criteria for qualification specifically excludes PLAINTIFFS and those similarly situated. *Randle v. Alexander*, 960 F.Supp.2d 457, 476 (S.D.N.Y. 2013).

90.     The PLAINTIFFS'' constitutional right to equal protection has been violated.

91.     By virtue of the above and the violation of PLAINTIFFS' constitutional rights, PLAINTIFFS have and will yet suffer irreparable harm, entitling PLAINTIFFS to declaratory and injunctive relief and damages including an award of counsel fees.

<u>**FOURTH CAUSE OF ACTION**</u>
**Violation of the Takings Clause (Regulatory Taking) of the Fifth Amendment of the U.S. Constitution and the Awarding of Attorney's Fees Pursuant to 42 U.S.C. 1988(b)**

92.     PLAINTIFFS repeat and re-allege by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

93.     The PLAINTIFFS assert that DEFENDANTS have engaged in regulatory taking that violated the Takings Clause of the Constitution.

94.     "That government can scarcely be deemed to be free, where the rights of property are left solely dependent upon the will of legislative body, without restraint. The fundamental maxims of a free government seem to require, that rights of personal liberty and private property should be held sacred." *Wilkinson v. Leland,* 27 U.S. 627, 657 (1829) (Story, J.).

95.     The Takings Clause of the Fifth Amendment applies to the states through the Fourteenth Amendment and provides that no "private property [shall] be taken for public use, without just compensation." *U.S. Const. amend. V; Kelo v. Cty of New London*, 545 U.S. 469, 496 (2005). To state such a claim, PLAINTIFFS "must demonstrate: (1) that they have a property interest protected by the Fifth Amendment, (2) that they were deprived of that [property] interest by the government for public use, and (3) that they were not afforded just compensation." *Ganci v. N.Y.C. Transit Auth.*, 420 F.Supp.2d 190, 195 (S.D.N.Y.), aff'd, 163 F. App'x 7 (2d Cir. 2005).

96.     In this case application of the Takings Clause is proper. The PLAINTIFFS have a Constitutionally protected ownership in and to their properties. This right includes the PLAINTIFFS' right to the compensation therefrom. The PLAINTIFFS are being deprived of this right to their property interest in favor of the public's use. The PLAINTIFFS have not been afforded any sort of compensation or relief for this deprivation.

97.     Under the Takings Clause of the Fifth Amendment the rescission of contractually guaranteed wage increases is considered a regulatory taking. *Buffalo Teachers Federation v. Tobe*, 464 F.3d 362, 374 (2d Cir. 2006), (citing *Penn Cent. Transp. Co v. City of New York*, 438 U.S. 104, 124 (1978)). Three factors are weighed to determine whether interference with property rises to the level of a regulatory taking: "(1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action." Id. at 375 (quoting *Connolly v. Pension Ben. Guar. Corp.*, 475 U.S. 211, 224-25 (1986)).

98.     Similar to the ruling in *Buffalo*, the moratorium against evictions, the ensuing loss of rents and the collection of taxes against the properties (without offering the CLASS any sort of relief, extensions or abatements) constitutes a classic regulatory taking.

99.     First, the economic impact of the continuing loss of rents has economically crippled PLAINTIFFS. If the PLAINTIFFS are forced to pay taxes on July 1st as scheduled, the adverse impact will be exponentially greater as they will be in default, suffering harm to their reputations, and also will be required to pay penalties of up to 18%.

100.    Second, the Order(s) have adversely and significantly interfered with the distinct investment-backed expectations held by the PLAINTIFFS and their partners. Every month that passes the PLAINTIFFS incur increasing losses and further suffer increasing deterioration of their properties.

101.    Through the Order(s) and eviction moratoriums, DEFENDANTS are depriving property owners of their fundamental property rights, including their rights to the interest in their properties, to just compensation and to due process.

102.    The Governor's Orders have critically wounded the financial health of the PLAINTIFFS and those who are similarly situated, without any offset, set aside or deferment that would mitigate or otherwise diminish the impact of the Order(s). Defendant New York City Department of Finance's continued collection of taxes without regard for the impact of the Governor's Orders further exacerbates the harm that has already been done.

103.    The issuance of the Order and each subsequent extension thereof constitutes a regulatory taking and due process violations.

104.    By virtue of the above and the violation of PLAINTIFFS' constitutional rights, PLAINTIFFS have and will yet suffer irreparable harm, entitling PLAINTIFFS to declaratory and injunctive relief and damages including an award of counsel fees.

## FIFTH CAUSE OF ACTION
### Violation of the Contracts Clause of the U.S. Constitution and the Awarding of Attorney's Fees Pursuant to 42 U.S.C. 1988(b)

105.    PLAINTIFFS repeat and re-allege by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

106.    The PLAINTIFFS assert that DEFENDANTS have engaged in behavior that violated the Contracts Clause of the Constitution.

107.    The United States Constitution prohibits States from impairing the obligations of contracts: "No State shall . . . pass any . . . Law impairing the Obligation of Contracts . . . ." U.S. Const. art. I, § 10, cl. 1. The Contracts Clause applies to states and their subdivisions, including the Airport Authority. *Horwitz-Matthews, Inc. v. City of Chi.*, 78 F.3d 1248, 1250 (7th Cir. 1996).

108.    To determine if a law trenches impermissibly on contract rights, the Courts have posed three questions to be answered in succession: (1) is the contractual impairment substantial and, if so, (2) does the law serve a legitimate public purpose such as remedying a general social or economic problem and, if such purpose is demonstrated, (3) are the means chosen to accomplish this purpose reasonable and necessary. *Energy Reserves Group*, 459 U.S. at 411-13, 103 S.Ct. 697; *Sanitation & Recycling Indus.*, 107 F.3d at 993.

109.    In the case at bar, the contractual impairment caused by the Governor's Order(s) and the underlying moratoriums has created an escalating decrease in rents collected which currently stands at approximately 22% for residential property owners and approximately 40% for commercial property owners with owners of larger properties suffering more than the average. By all measures this is a substantial impairment.

110.    Secondly, while the Order(s) and moratoriums serve a legitimate public purpose during this horrific Pandemic, the impact only helps a portion of the public while completely turning its back on the rest of the population. It is of tremendous importance that renters in the State receive relief from eviction during these terrible times, it does not adequately serve the

public's interest to leave a large percentage of property owners out in the cold to fend for themselves.

111.    Finally, the Order(s) are not reasonable to the extent that those property owners who are left out continue to suffer irreparable harm in the face of catastrophic circumstances. It is, by all measures, unnecessary for the DEFENDANTS to target the PLAINTIFFS and those who are similarly situated.

112.    That a contract-impairing law has a legitimate public purpose does not mean there is no Contracts Clause violation. The impairment must also be one where the means chosen are reasonably and narrowly tailored necessary to meet the stated legitimate public purpose. *U.S. Trust Co*., 431 U.S. at 22-23, 97 S.Ct. 1505; see *Sanitation & Recycling Indus*., 107 F.3d at 993 ("A law that works substantial impairment of contractual relations must be specifically tailored to meet the societal ill it is supposedly designed to ameliorate."). If it is not, then the law violates the Contracts Clause.

113.    In the present case, the Order(s) do not meet all of the societal ills that it is supposedly designed to ameliorate. The issue of large scale, failing properties serves merely to extend the current economic issues further.

114.    By virtue of the above and the violation of PLAINTIFFS' constitutional rights, PLAINTIFFS have and will yet suffer irreparable harm, entitling PLAINTIFFS to declaratory and injunctive relief and damages including an award of counsel fees.

## FIFTH CAUSE OF ACTION
### Permanent Injunction

115.    PLAINTIFFS repeat and re-allege by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

116.    The PLAINTIFFS assert that a permanent injunction is required to pause the State

and the City of New York from the collection of property taxes as scheduled until such time that

the PLAINTIFFS can collect rents and/or receive some alternative protection from the

DEFENDANTS.

117.    A party seeking a permanent injunction must demonstrate (1) that it has suffered

an irreparable injury; (2) that remedies available at law, such as monetary damages, are

inadequate to compensate for that injury; (3) that, considering the balance of hardships between

the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would

not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388,

391, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006); *see also EMA Financial LLC v. Aim Exploration,*

*Inc.*, No. 18 Civ. 145, 2019 WL 689237, at *12 (S.D.N.Y. Feb. 19, 2019) (quoting and

applying *eBay*).

118.    In the case at bar, the PLAINTIFFS and those similarly situated have been and

continue to suffer irreparable injury that monetary damages would be inadequate to recompensate

for and a remedy in equity is warranted.

119.    Without rents, the PLAINTIFFS will not be able to pay taxes when due, they will

be in default, and they will incur additional penalties and fees. Serving and processing evictions

will not cure these issues at the end of the Pandemic.

120.    This Court has previously been persuaded by the reasoning of the decisions that

have granted permanent injunctions under circumstances similar to those presented here.

"Monetary damages awarded after the fact do not provide an adequate remedy in a case where the

actual loss caused by the infringement cannot be measured precisely." *Bay side Boys*, 2013 WL

5352599, at *7. In addition, the failure to issue a permanent injunction would be tantamount to

the creation of a Socialist free rent state. As stated previously, PLAINTIFFS acknowledge the

severity of the ongoing COVID-19 pandemic and the necessity for rent eviction moratorium to help tenants during these trying times. But why leave out the property owners?

121.     In similar cases related to copyright law, the Second Circuit has noted that "[i]n the copyright realm, ... an injunction should be granted if denial would amount to a forced license to use the creative work of another." *Silverstein v. Penguin Putnam, Inc.*, 368 F.3d 77, 84 (2d Cir. 2004).

122.     The permanent injunction would serve the public interest by prohibiting the infringing conduct in furtherance of the PLAINTIFFS' Constitutional Rights. See *Living Room Steak House*, 2016 WL 756567, at *7.

123.     "The decision to grant or deny permanent injunctive relief is within the Court's equitable discretion." *eBay*, 547 U.S. at 391, 126 S.Ct. 1837. *Alpha Capital Anstalt v Shiftpixy, Inc.*, 19 CIV. 6199 (PGG), 2020 WL 104697, at *9 [SDNY Jan. 9, 2020]

## PRAYER FOR RELIEF

**WHEREFORE**, PLAINTIFFS request that the Court:

A.     Certify the Plaintiff Class;

B.     Declare the relevant Executive Order(s) unconstitutional;

C.     Enjoin the relevant Executive Order;

D.     Issues a Permanent Injunction that pauses Governor Cuomo, the State of New York, the Mayor of New York City, and the New York City Department of Finance's collection of property taxes while PLAINTIFFS are unable to collect rents or in the alternative cause the DEFENDANTS to offer an extension and payment plans specifically for PLAINTIFFS and other property owners who are currently exempt from all available programs of this nature and ensure that DEFENDANTS issue an Executive Order to this effect;

E.      On all Cause of Actions, declaring that DEFENDANTS violated the

PLAINTIFFS' rights under the United States Constitution and grant declaratory and injunctive

relief and damages in favor of the PLAINTIFFS;

F.      Award costs of this action, including reasonable attorney's fees to PLAINTIFFS;

and

G.      An order granting such other legal and equitable relief as the Court deems just and

proper.

Dated: June 4, 2020

                        Respectfully Submitted,


                        By: */s/ Migir Ilganayev*
                            MIGIR ILGANAYEV
                            *Attorney for the Plaintiffs*
                            139 Fulton Street, Suite 801
                            New York, New York 10038
                            ilganayevlaw@gmail.com