**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ENT INT'L REALTY CORP., H.P.S.O.N.Y., INC.,
N.Y.A.H., INC., R.C.F.H.P., INC. On behalf
Of themselves and all others similarly situated

Case No. 1:20-CV-4277

                                                             Plaintiffs,


                                    -against-


ANDREW CUOMO, in his personal and official capacity as Governor
of the State of New York, BILL De BLASIO in his personal and
official capacity as Mayor of New York City, and THE NEW YORK
CITY DEPARTMENT OF FINANCE

                                                             Defendants.


**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR APPLICATION**
**FOR TEMPORARY RETRAINING ORDER AND EQUITABLE RELIEF AND ORDER**
**TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT BE ISSUED**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ii

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT .................................................................................................................................3

    I.    Legal Standard ................................................................................................................3

    II.    Plaintiffs Satisfy the Requirements For A TRO and Preliminary Injunction ...................4

        A.    Plaintiffs Are Likely to Succeed on the Merits ..........................................................4

    III.    Absent an Injunction, Plaintiffs will be Irreparably Injured ............................................11

    IV.    The Balance of Hardships Tips in the Plaintiffs' Favor ..................................................13

    V.    The Public Interest Will not be Disserved ......................................................................14

CONCLUSION .............................................................................................................................15

# TABLE OF AUTHORITIES

## Cases

*Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985)........................................................ 4

*AIM Int'l Trading LLC v. Valcucine SpA*, 188 F. Supp. 2d 384, 387 (S.D.N.Y. 2002)............... 12

*Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 242 (1978) ............................................. 10

*Attallah v. N.Y. Coll. of Osteopathic Med.*, 94 F. Supp. 3d 448, 458 (E.D.N.Y. 2015) ................ 6

*Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F. 3d 887, 894-95 (2d Cir. 2015)........................ 3

*BigStar Entm't, Inc. v. Next Big Star, Inc.*, 105 F. Supp. 2d 185, 191 (S.D.N.Y. 2000)............... 4

*Buffalo Teachers Federation v. Tobe*, 464 F.3d 362, 374 (2d Cir. 2006).................................. 8.9

*Columbia Broad. Sys., Inc. v. Am. Soc'y of Composers, Authors and Publishers*, 320 F. Supp.

    389, 392 (S.D.N.Y. 1970) ...................................................................................................... 14

*Connolly v. Pension Ben. Guar. Corp.*, 475 U.S. 211, 224-25 (1986) .......................................... 9

*County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)..................................................... 5

*Danaher Corp. v. Chicago Pneumatic Tool Co., Nos.* 86 Civ 3499 (PNL), 86 Civ. 3638 (PNL),

    1986 WL 7001, at 14 (S.D.N.Y. June 19, 1986)...................................................................... 12

*Daniels v. Williams*, 474 U.S. 327, 331 ....................................................................................... 5

*eBay*, 547 U.S. at 391................................................................................................................... 14

*Echo Design Grp. V. Zino Davidoff S.A.*, 283 F. Supp. 2d 963, 966 (S.D.N.Y. 2003) ................. 4

*Energy Reserves Group, Inc. v. Kansas Power & Light*................................................................ 10

*Energy Reserves*, 459 U.S. at 411................................................................................................. 10

*Ganci v. N.Y.C. Transit Auth.*, 420 F.Supp.2d 190, 195 (S.D.N.Y.), aff'd, 163 F. App'x 7 (2d Cir.

    2005)......................................................................................................................................... 8

*Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) .............................................................. 7

*Hellenic Am.Neighborhood Action Comm. v. City of N.Y.,* 101 F. 3d 877, 880 (2d Cir. 1996) ..... 6

*Hudson v.Palmer,*  468 U.S. 517, 533 (1984)................................................................. 6

*John B. Hull, Inc. v. Waterbury Prods., Inc*., 588 F.2d 24, 28-29 (2d Cir. 1978) ........................ 12

*Juicy Couture Inc. v. Bella Int'l, Ltd*., 930 F.Supp.2d 489, 505 (S.D.N.Y. 2013)........................ 14

*Karpova v. Snow*, 497 F.3d 262, 270 (2d Cir. 2007) ..................................................... 7

*Local 342, Long Island Pub. Serv. Emps., UMD, ILA, AFCIO v. Town Bd. of Huntington*, 31

   F.3d 1191, 1194 (2d Cir. 1994) ..................................................................... 6

*Martinez v. Cuomo* (S.D.N.Y. 2020) ..................................................................... 14

*N.A.A.C.P., Inc*., 70 F. 3d at 223 ......................................................................... 13

*Pan Am. World Airways Inc. v. Flight Eng'rs Int'l Ass'n*, 306 F.2d 840, 842-43 (2d Cir. 1962) . 11

*Pena v. DePrisco*, 432 F.3d 98, 112 (2d Cir. ................................................................. 5

*Penn Cent. Transp. Co v. City of New York*, 438 U.S. 104, 124 (1978)........................................ 8

*Randle v. Alexander*, 960 F.Supp.2d 457, 476 (S.D.N.Y. 2013) ................................................... 8

*Register.com v. Verio, Inc*., 356 F.3d 393, 404 (2d Cir. 2004)...................................... 12

*Reuters Ltd. v. United Press Int'l Inc*., 903 F.2d 904, 909 (2d Cir. 1990) ................................... 14

*Salinger*, 607 F.3d at 79-80.............................................................................. 13

*Semmes Motors, Inc. v. Ford Motor Co*., 429 F.2d 1197, 1205 (2d Cir. 1970)............................ 12

*Shakur v. Selsky*, 391 F.3d 106, 188 (2d Cir. 2004) ..................................................... 6

*Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 332 (2d Cir. 1995)............................................. 12

*U.S. Const. amend. V; Kelo v. Cty of New London*, 545 U.S. 469, 496 (2005)............................ 8

*U.S. Trust Co. v. New Jersey*, 431 U.S. 1, 22-23 (1977) ..................................................... 11

*United States v. Salerno,* 481 U.S. 739, 746 (1987) ...................................................... 5

*Warner Bros*., 877 F.2d at 1124................................................................................ 12

*Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) ................................................................. 6

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) ................................. 13

*Wisdom Import Sales Co., LLC v. Labatt Brewing Co.*, 339 F.3d 101, 114-115 (2d Cir. 2003) .. 12

*Wolff v. McDonnell*, 418 U.S. 539, 558 (1974) ............................................................. 5

**Other Authorities**

Executive Law 29-a ........................................................................................................ 11

Executive Order 202.8 ................................................................................................. 1, 2

Fixed-Term Income-Based Plan ...................................................................................... 2

New York State Executive Law § 29-a of Article 2(b) .................................................... 1

Property Tax and Interest Deferral (PT AID) program .................................................. 2

Under Section 10 of Article I of the Constitution ......................................................... 9

**Rules**

Fed. R. Civ. P. 65 ........................................................................................................ 1, 3

Plaintiffs respectfully submit this Memorandum of Law in support of the entry of an Order to Show Cause, pursuant to Fed. R. Civ. P. 65, granting a Temporary Restraining Order barring Governor Cuomo's enforcement of Executive Orders 202.8 and 202.28, barring Mayor De Blasio and the New York City Department of Finance from collecting property taxes on July 1, 2020 from Plaintiffs and those who are similarly situated without default or the accrual of penalty interest, extending the time for the payment of the July 1st property taxes, and scheduling an expedited hearing as to why a preliminary injunction should not be entered, as well as other equitable relief.

## PRELIMINARY STATEMENT

Over the first half of 2020, our nation and the World has been rocked by a once in a millennium pandemic. Without warning we have witnessed devastation and death unlike anything our country has experienced in over 100 years. Our leaders and elected officials have been at the forefront of responding to the pandemic on every level. Healthcare, rightfully receiving the highest priority, officials have attempted to mitigate and curb the short and long-term effects across all facets of society. In the State of New York, Governor Cuomo's ("Cuomo" or the "Governor") response and leadership have been exemplary as the sharp decline in new COVID-19 cases in the state indicates. New York has gone from the epicenter of the virus, to nearly out containing it.

As the impact of the virus began to unfold in February and March of this year, Cuomo recognized the dire economic toll that tenants throughout the State would suffer. As a result, the Governor took clear and decisive action with the issuance of Executive Order 202.8 on March 20, 2020 and the extension of this order with Executive Order 202.28 in late May (the "Executive Orders"). New York State Executive Law § 29-a of Article 2(b) authorizes the

issuance of executive orders with all of the authority of a law introduced and enacted through traditional processes for as long as the executive order remains in effect. Executive orders are subject to the state constitution, the federal constitution as well as federal statutes and regulations.  Executive Order 202.8 states in part:

> "There shall be no initiation of a proceeding or enforcement of either an eviction of any residential or commercial tenant, for nonpayment of rent or a foreclosure of an residential or commercial mortgage, for nonpayment of such mortgage, owned or rented by someone that is eligible for unemployment insurance or benefits under state or federal law or otherwise facing financial hardship due to the COVID-19 pandemic for a period of sixty days beginning on June 20, 2020."

The Executive Orders, while effective in reducing the financial impact of the pandemic for most tenants and property owners across the State, created an unfair and unconstitutional hardship for property owners like the Plaintiffs in this case and those who are similarly situated. The Governor left thousands of property owners, whom are the backbone of New York's economy, without any sort of property tax relief in sight. The Executive Orders fall short in that it penalizes property owners whose quarterly taxes remain due even though collected rents have reached historically low levels across all rental categories in the State and City of New York.

The New York City Department of Finance implemented several programs to assist property owners facing hardships in making their property tax payments. These programs include exemption programs to lower the amount of taxes owed, standard payment plan options as well as the new Property Tax and Interest Deferral (PT AID) program, for those who qualify. Specifically, the New York City Department of Finance is offering an "Extenuating Circumstances Income-Based Plan", and "Fixed-Term Income-Based Plan" (the "relief Programs"). Each of the Relief Programs affords qualified property owners much needed relief.

The Relief Programs' eligibility criteria states in part:

"The property must be a one- to three-unit tax class 1 residential property, or a condominium. The property must have been the applicant's primary residence for at least one year. Applicants must have a federal adjusted gross income (AGI) of $58,399 or less. Applicants must be able to document an extenuating circumstance such as the death or serious illness of a property's owner or immediate family member, loss of income."

The Plaintiffs and thousands of other property owners throughout New York do not qualify for any of the programs that are offered even though they have suffered the greatest economic losses. The Plaintiffs' goal in bringing this action is simply to avoid the same economic disasters through government authorized protections that the Governor and the other Defendants have created for the other citizens of the State.

## FACTS

The facts relevant to this application are fully set forth in the attached Declaration of Robert Galpern, dated June 24, 2020 (the "Galpern Decl.") and the Complaint filed June 4, 2020, with attached exhibits. For the sake of efficiency, only those facts necessary to conduct the analysis below will be reproduced herein.

## ARGUMENT

### I.   Legal Standard

Under Fed. R. Civ. P. 65, in order to obtain a preliminary injunction, a moving party must show: 1) "a likelihood of success on the merits or ...... sufficiently serious questions going to the merits to make them fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor"; (2) a likelihood of "irreparable injury in the absence of an injunction"; (3) that "the balance of hardships the plaintiff's favor"; and (4) that the public interest would not be disserved." See *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F. 3d 887, 894-95 (2d Cir. 2015) (initial citations omitted). The Temporary restraining order standard is the same. See, e.g., *Echo Design Grp. V. Zino Davidoff S.A.,* 283 F. Supp. 2d 963, 966 (S.D.N.Y. 2003). In the current

case the Plaintiffs have endured and will continue to endure irreparable harm as a result of the issuance of the Executive Orders and the Defendants intended collection of property taxes on July 1, 2020. The Plaintiff's application for an injunction is not intended to stop the collection of the July 1st property taxes, instead, Plaintiffs' goal is to delay the collection of the taxes without default or the accrual of penalty interest. The TRO is warranted because time is of the essence.

**II.   Plaintiffs Satisfy the Requirements for A TRO and Preliminary Injunction**

   **A.  Plaintiffs Are Likely to Succeed on the Merits**

To establish a likelihood of success on the merits, a plaintiff "need not show that success is certain, only that the probability of prevailing is 'better than fifty percent'". *BigStar Entm't, Inc. v. Next Big Star, Inc.*, 105 F. Supp. 2d 185, 191 (S.D.N.Y. 2000) (quoting *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985)). Plaintiffs can also satisfy the alternative test of "sufficiently serious questions going to the merits to make them a fair ground for litigation" given that the balance of hardships stemming from any limited and temporary relief tips decidedly in their favor. *See Benihana* at 894-95. In the current case, property taxes are due to be collected on July 1, 2020. The Plaintiffs and those who are similarly situated have experienced devastating losses because of the pandemic and the issuance of the Executive Orders. The protection programs that have been implemented by the Governor and Mayor De Blasio are not available to the Plaintiffs. The Plaintiffs have and will continue to suffer increasing levels of irreparable harm if the requested injunction is not issued, preventing the collection of property taxes, without default or penalty, on the scheduled date.

The Plaintiffs will succeed on all counts on their merits as the Defendants have wrongfully left the Plaintiffs and those who are similarly situated out in the cold without any relief from the losses that they have incurred. The Defendants have violated the Plaintiff's

constitutional rights and intend to add to these injuries by collecting property taxes on July 1st. A temporary restraining order and subsequent injunction is appropriate and should be issued in this action.

         **i.**     ***Substantive Due Process***

Substantive due process is a means of "protection of the individual against arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974). "In order to establish a violation of a right to substantive due process, a plaintiff must demonstrate not only government action but also that the government action was `so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Pena v. DePrisco*, 432 F.3d 98, 112 (2d Cir. 2005) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)).

Substantive due process "prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty." *United States v. Salerno*, 481 U.S. 739, 746 (1987) (internal quotation marks and citations omitted). The Supreme Court limits substantive due process claims to "deliberate decisions of government officials to deprive a person of life, liberty, or property." *Daniels v. Williams*, 474 U.S. 327, 331 (1986) (emphasis omitted).

In the current case, the Defendants have engaged in behavior that violated the right to Substantive Due Process. This substantive guarantee is intended to preclude state and local governments from engaging in conduct that deprives individuals of life, liberty and property. Defendants' actions and inactions violates substantive due process by so severely depriving the Plaintiffs of their property rights, while mandating that the Plaintiffs remit property taxes on schedule without offering any sort of relief whatsoever.  Forcing the Plaintiffs to pay property taxes by July 1, 2020, while essentially telling all residential and commercial tenants

that they do not have to pay rent, until at least August 20, 2020, is unconstitutionally arbitrary and does not  adequately serve all of the citizens of the State, namely the Plaintiffs and those who are similarly situated.

### ii. *Procedural Due Process*

To assert a violation of procedural due process rights, a plaintiff must "first identify a property right, second show that the state has deprived him of that right, and third show that the deprivation was effected without due process." *Local 342, Long Island Pub. Serv. Emps., UMD, ILA, AFCIO v. Town Bd. of Huntington*, 31 F.3d 1191, 1194 (2d Cir. 1994) (citation and emphasis omitted). A claimed violation of procedural due process involves a two-step analysis: (1) the court examines whether the State deprived plaintiff of a constitutionally protected interest, and (2) if so, the court determines whether the procedures surrounding that deprivation were constitutionally adequate. See *Shakur v. Selsky*, 391 F.3d 106, 118 (2d Cir. 2004). "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word `liberty,' or it may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (citations omitted).

With respect to the second prong, ordinarily no pre-deprivation process is required so long as there exists an adequate post-deprivation remedy. *See Attallah v. N.Y. Coll. of Osteopathic Med.*, 94 F. Supp. 3d 448, 458 (E.D.N.Y. 2015) ("In sum, because an adequate post-deprivation remedy exists for review of plaintiff's expulsion, there can be no Fourteenth Amendment violation to support a Section 1983 claim." (citing, *inter alia*, *Hellenic Am. Neighborhood Action Comm. v. City of N.Y.*, 101 F.3d 877, 880-82 (2d Cir. 1996)), aff'd, 643 F. App'x 7 (2d Cir. 2016), cert. denied, 2017 WL 69274 (U.S. Jan. 9, 2017); *see also Hudson v. Palmer*, 468 U.S. 517, 533 (1984).

Defendants' actions have deprived the Plaintiffs of their property rights, specifically their right to compensation. Procedural Due Process affords the rights to notice and a hearing when the state deprives an individual of fundamental property rights.  No remedies or hearings of any kind are available to the Plaintiffs to address the loss of compensation. No end of the losses is in sight.  Under the Due Process Clauses of the Fifth and Fourteenth Amendments, " no person may be deprived of life, liberty, or property without reasonable notice and an opportunity to be heard." *Karpova v. Snow*, 497 F.3d 262, 270 (2d Cir. 2007).

The Governor's issuance of the Executive Order(s) and the underlying moratoriums on eviction coupled with the State, The City of New York and the New York City Department of Finance's taxation of the property owners that have been deprived of income as a result of the Executive Orders, have created an irreparable economic loss that is ongoing. By simply reassessing the overall protections afforded to the citizens and ensuring that all property owners are included, the Defendants will have remedied this situation. If the Plaintiffs are forced to do the impossible, which is to remit timely tax payments on July 1st as scheduled, Plaintiffs will be in default, be subjected to accruing penalty interest of as much as 18%, and fall into further economic disrepair as well as other significant problems associated with the loss of revenue.

### iii.   Equal Protection Clause

This Court has held that "" The equal protection clause directs state actors to treat similarly situated people alike. To prove an equal protection violation, claimants must prove purposeful discrimination, directed at an identifiable or suspect class." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (citations omitted). In other words, " [t]o prove a violation of the Equal Protection Clause . . . a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination."  In the current

case, only those property owners with one-to three-family homes and condos were made eligible for tax relief programs implemented by the Defendants. However, Plaintiffs and all other landlords who are similarly situated have been excluded. This exclusion is intentional as shown in the Memo issued by Defendant New York City Department of Finance where the criteria for qualification specifically excludes Plaintiffs and those similarly situated. *Randle v. Alexander*, 960 F.Supp.2d 457, 476 (S.D.N.Y. 2013).

### iv.  Regulatory Taking

The Takings Clause of the Fifth Amendment applies to the states through the Fourteenth Amendment and provides that no "private property [shall] be taken for public use, without just compensation." *U.S. Const. amend. V; Kelo v. Cty of New London*, 545 U.S. 469, 496 (2005). To state such a claim, Plaintiffs "must demonstrate: (1) that they have a property interest protected by the Fifth Amendment, (2) that they were deprived of that [property] interest by the government for public use, and (3) that they were not afforded just compensation." *Ganci v. N.Y.C. Transit Auth.*, 420 F.Supp.2d 190, 195 (S.D.N.Y.), aff'd, 163 F. App'x 7 (2d Cir. 2005).

In the current case, the application of the Takings Clause is proper. The Plaintiffs have a Constitutionally protected ownership in and to their properties. This right includes the Plaintiffs' right to the compensation therefrom. The Plaintiffs are being deprived of this right to their property interest in favor of the public's use. The Plaintiffs' have not been afforded any sort of compensation or relief for this deprivation.

The Takings Clause has been applied to show that the rescission of contractually guaranteed wage increases is considered a regulatory taking. *Buffalo Teachers Federation v. Tobe*, 464 F.3d 362, 374 (2d Cir. 2006), (citing *Penn Cent. Transp. Co v. City of New York*, 438 U.S. 104, 124 (1978)). Three factors are weighed to determine whether interference with

property rises to the level of a regulatory taking: "(1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action." Id. at 375 (quoting *Connolly v. Pension Ben. Guar. Corp.*, 475 U.S. 211, 224-25 (1986)).

Like the ruling in *Buffalo*, the moratorium against evictions, the ensuing loss of rents and the collection of taxes against the properties (without offering the Plaintiffs any sort of relief, extensions, or abatements) constitutes a classic regulatory taking.  First, the economic impact of the continuing loss of rents has economically crippled Plaintiffs. If the Plaintiffs are forced to pay taxes on July 1st as scheduled, the adverse impact will be exponentially greater as they will be in default, suffering harm to their reputations, and also will be required to pay penalties of up to 18%. Second, the Order(s) have adversely and significantly interfered with the distinct investment-backed expectations held by the Plaintiffs and their partners. Every month that passes the Plaintiffs incur increasing losses and further suffer increasing deterioration of their properties.  Through the Order(s) and eviction moratoriums, Defendants are depriving property owners of their fundamental property rights, including their rights to the interest in their properties, to just compensation and to due process.

The Governor's Orders have critically wounded the financial health of the Plaintiffs and those who are similarly situated, without any offset, set aside or deferment that would mitigate or otherwise diminish the impact of the Order(s). Defendant New York City Department of Finance's continued collection of taxes without regard for the impact of the Governor's Orders further exacerbates the harm that has already been done.  The issuance of the Order and each subsequent extension thereof constitutes a regulatory taking and due process violations.

v.      *Contract Clause*

Under Section 10 of Article I of the Constitution, no state shall pass any law "impairing the Obligation of Contracts." The Contract Clause must be accommodated to the police power a state exercises to protect its citizens. *See Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 410 (1983). The Contract Clause is viewed as imposing "some limits upon the power of a State to abridge existing contractual relationships." *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 242 (1978) (emphasis omitted).

Those limits are determined by a three-part test: (1) whether the contractual impairment is in fact substantial; if so, (2) whether the law serves a significant public purpose, such as remedying a general social or economic problem; and, if such a public purpose is demonstrated, (3) whether the means chosen to accomplish this purpose are reasonable and appropriate. *See id*. at 242-44, The first step in the analysis is to determine "whether the state law has, in fact, operated as a substantial impairment of a contractual relationship." *Allied Structural Steel* at 244. The more severe the impairment, the greater the level of scrutiny given it. *Energy Reserves*, 459 U.S. at 411. The primary consideration in determining whether the impairment is substantial is the extent to which reasonable expectations under the contract have been disrupted. Impairment is greatest where the challenged government legislation was wholly unexpected. Also relevant to the determination of the degree of impairment is the extent to which the challenged provision provides for "gradual applicability or grace periods." *Allied Structural Steel* at 247.

The next step is to examine the state's justification for its action. *See Energy Reserves*, 459 U.S. at 411. The law must have a "legitimate public purpose." *Id*. It should be aimed at remedying an important "general social or economic problem" rather than "providing a benefit to

special interests." *Id*. at 412.  If the legislative purpose is valid, the final inquiry is to determine whether the means chosen to achieve that goal are reasonable. *U.S. Trust Co. v. New Jersey*, 431 U.S. 1, 22-23 (1977). A law that works substantial impairment of contractual relations must be specifically tailored to meet the societal ill it is supposedly designed to ameliorate. *Allied* at 243.

All the elements needed to determine that the Executive Orders are a violation of the Contract Clause are present in this matter.  Defendant Cuomo has authority, via Executive Law 29-a, to issue Executive Orders which have the impact of law.  The contractual impairment to Plaintiffs is in fact substantial, the Executive Orders shut Plaintiffs down and prevents them from fulfilling present contracts or engaging in new ones.  Moreover, the Executive Orders do not serve a legitimate public purpose in determining that Plaintiffs' cannot enforce the collection rent from their tenants through judicial intervention.  Finally, the law does not have a reasonable means of implementation, in that it is arbitrary by providing smaller property owners with tax relief programs while completely leaving out the larger property owners such as the Plaintiffs in this case.

### III.    Absent an Injunction, Plaintiffs will be Irreparably Injured

A temporary restraining order is designed to preserve the status quo. "The purpose of a temporary restraining order is to preserve an existing situation in status quo until the court has an opportunity to pass upon the merits of the demand for a preliminary injunction." *Pan Am. World Airways Inc. v. Flight Eng'rs Int'l Ass'n*, 306 F.2d 840, 842-43 (2d Cir. 1962). The Plaintiffs have a long history of paying its property taxes on time and remaining default free throughout their time as property owners and landlords. The current circumstances threaten to force the Plaintiffs into default and penalty interest. The Plaintiffs are seeking additional time before the July 1st

taxes are collected, without default or penalty. The timing of this application is critical as the collection date for the property taxes is upon us.

Second Circuit law recognizes that "[a] threat to the continued existence of a business can constitute irreparable injury." *John B. Hull, Inc. v. Waterbury Prods., Inc*., 588 F.2d 24, 28-29 (2d Cir. 1978) (citing *Semmes Motors, Inc. v. Ford Motor Co*., 429 F.2d 1197, 1205 (2d Cir. 1970)). A threatened loss of good will also supports a finding of irreparable injury. See *Register.com v. Verio, Inc*., 356 F.3d 393, 404 (2d Cir. 2004) (affirming finding that loss of reputation, good will, and business opportunities constituted irreparable harm).

To demonstrate irreparable harm, a plaintiff must show an injury that is "actual and imminent" and "cannot be remedied by an award of monetary damages." *Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 332 (2d Cir. 1995) (citation and internal quotation marks omitted). A court may grant a temporary restraining order to preserve the status quo before a hearing can occur on the merits of a party's preliminary injunction motion. *Warner Bros*., 877 F.2d at 1124; see also *AIM Int'l Trading LLC v. Valcucine SpA*, 188 F. Supp. 2d 384, 387 (S.D.N.Y. 2002) (sine qua non "of a temporary restraining order is to preserve an existing situation in status quo until the court has an opportunity to pass upon the merits of the demand for a preliminary injunction").The Court has previously ruled that threats of financial hardship or control are threats of 'irreparable injury". See *Wisdom Import Sales Co., LLC v. Labatt Brewing Co*., 339 F.3d 101, 114-115 (2d Cir. 2003)); *Danaher Corp. v. Chicago Pneumatic Tool Co., Nos*. 86 Civ. 3499 (PNL), 86 Civ. 3638 (PNL), 1986 WL 7001, at 14 (S.D.N.Y. June 19, 1986) (granting preliminary injunction to plaintiff shareholders so that they could "exercise their rightful control over the corporation").

Plaintiffs' injuries are actual and will continue to accrue if the Executive Orders are allowed to remain in effect without the implementation of some form of relief for the timing of property tax payments.  July 1st is upon us, and the non-payment of taxes will force Plaintiffs and others who are similarly situated into default and further debt. These are circumstances that are completely avoidable by the issuance of the injunction sought through this motion. Monetary compensation cannot remedy the continuing civil rights violations occurring if these Executive Orders are allowed to remain and the Defendants can go unchecked with the collection of property taxes as scheduled.  The total potential losses to the Plaintiffs and others who are similarly situated is incalculable. The Plaintiffs' constitutional rights and property ownership are at stake.

## IV.    The Balance of Hardships Tips in the Plaintiffs' Favor

In considering a motion for a preliminary injunction, the court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." See *Winter v. Natural Res. Def. Council, Inc*., 555 U.S. 7, 24 (2008). Plaintiffs must establish that the balance of hardships tips in their favor regardless of the likelihood of success. *Salinger*, 607 F.3d at 79-80. In addition, a court may award preliminary injunctive relief only if the "public interest would not be disserved." Id. at 80. Because the Plaintiffs demonstrated that irreparable harm and the likelihood of success on the merits, Plaintiffs are not required to show that the balance of hardships tips in its favor. See *N.A.A.C.P., Inc.*, 70 F. 3d at 223. However, the balancing of hardships does tip decidedly in Plaintiffs' favor. The State of New York and the City of New York have each received forms of Federal Aid because of the pandemic. The Plaintiffs and those who are similarly situated have been left out in the cold by every level of their government. The hardship that has been and that

will continue to be incurred by the Plaintiffs and those who are similarly situated will have a long-lasting, irreparable and potentially devastating impact that will increase over time as the penalty interest from unpaid taxes accrues. The state has no claim of hardship that will occur that is not outweighed by the magnitude of the harm that has been and will be suffered by Plaintiffs. *Martinez v. Cuomo* (S.D.N.Y. 2020)

The balance of the equities thus favors the grant of a temporary restraining order. See *Reuters Ltd. v. United Press Int'l Inc.*, 903 F.2d 904, 909 (2d Cir. 1990) (a balance of equities tips in the movant's favor where appellant's irreparable harm is weighed against an appellee's need only to continue its previous course of conduct); *Columbia Broad. Sys., Inc. v. Am. Soc'y of Composers, Authors and Publishers*, 320 F. Supp. 389, 392 (S.D.N.Y. 1970) (party's substantial loss of revenue is a relevant consideration in concluding that balance of hardships tips in favor of granting the party emergency injunctive relief).

## V.     The Public Interest Will not be Disserved

Finally, the Court must " ensure that the 'public interest would not be disserved' by the issuance of a preliminary injunction." See *eBay*, 547 U.S. at 391, see also *Juicy Couture Inc. v. Bella Int'l, Ltd.*, 930 F.Supp.2d 489, 505 (S.D.N.Y. 2013). In this case, the issuance of an injunction will prevent the Plaintiffs and others who are similarly situated from incurring significant financial losses that will in turn have adverse long-term effects on the State's economy as property owners attempt to recover lost revenues through rent increases and delaying property improvements. The public interest will not be disserved by the issuance of an injunction. The public interest will be best served by the issuance of a TRO and injunction.

14

## <u>CONCLUSION</u>

Based on the foregoing, the Court should grant Plaintiffs' Motion for Preliminary

Injunction with a Temporary Restraining Order.


Dated: New York, New York
          June 26, 2020

                                                    Respectfully submitted,


                                        By:  */s/ Migir  Ilganayev*__
                                              **MIGIR ILGANAYEV**
                                              *Attorney for the Plaintiffs*
                                              139 Fulton Street, Suite 801
                                              New York, New York 10038
                                              ilganayevlaw@gmail.com
                                              Tel: (646) 396-8050

## CERTIFICATE OF SERVICE

I hereby certify that, on June 26, 2020, I electronically filed this Plaintiffs' Memorandum of Law in Support of their Application for Temporary Restraining Order and Equitable Relief and Order to Show Cause Why a Preliminary Injunction Should Not be Issued with the Clerk of the Court using the CM/ECF system, which will send Notices of Electronic Filing (NEF) to all registered participants and that paper copies will be sent to those counsel listed as non-registered participants on this same date.

/s/_Migir Ilganayev_____
MIGIR ILGANAYEV
*Attorney for the Defendants*
139 Fulton Street, Suite 801
New York, New York 10038
ilganayevlaw@gmail.com
Tel: (646) 396-8050