UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ENT INT'L REALTY CORP., H.P.S.O.N.Y., INC.,
N.Y.A.H., INC., R.C.F.H.P., INC., on behalf
of themselves and all others similarly situated,

*Plaintiffs*,

- against -

ANDREW CUOMO, in his personal and official
capacity as Governor of the State of New York, BILL
De BLASIO in his personal and official capacity as
Mayor of New York City, and THE NEW YORK
CITY DEPARTMENT OF FINANCE,

*Defendants*.

Case No. 1:20-CV-4277 (PKC)

## GOVERNOR ANDREW M. CUOMO'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

LETITIA JAMES
Attorney General
State of New York
28 Liberty Street
New York, New York 10005
Tel: (212) 416-6382

*Attorney for Governor Cuomo*

OWEN T. CONROY
Assistant Attorney General
    *Of Counsel*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................... iii

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ....................................................................................................................... 3

ARGUMENT ............................................................................................................................. 7

I.  PLAINTIFFS HAVE NOT SERVED GOVERNOR CUOMO WITH THE SUMMONS AND COMPLAINT ................................................................................................................. 7

II.  THE COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION TO ENTERTAIN PLAINTIFFS' CLAIMS FOR TAX RELIEF ..................................................... 8

III.  PLAINTIFFS' CLAIMS SHOULD BE DISMISSED FOR MOOTNESS ................... 10

IV.  PLAINTIFFS' CLAIMS ARE BARRED BY SOVEREIGN IMMUNITY ................. 11

V.  THE COMPLAINT FAILS TO STATE A CLAIM THAT EO 202.28 VIOLATES PLAINTIFFS' CONSTITUTIONAL RIGHTS ....................................................................... 11

   A.  Standard of Review. ...................................................................................................... 12

   B.  The *Elmsford* Opinion. ................................................................................................ 12

   C.  Plaintiffs Fail to State a Regulatory Taking Claim. ....................................................... 13

   D.  Plaintiffs Fail to State a Due Process Claim. ................................................................. 17

   E.  Plaintiffs Fail to State a Contracts Clause Claim. .......................................................... 19

   F.  Plaintiffs Fail to State an Equal Protection Claim ......................................................... 22

VI.  PLAINTIFFS ARE NOT ENTITLED TO A PRELIMINARY INJUNCTION ........... 23

   A.  Standard of Review. ...................................................................................................... 23

   B.  Plaintiffs Have Not Established a Clear or Substantial Likelihood of Success on the Merits. .................................................................................................................................. 23

   C.  Plaintiffs' Lack of Diligence Negates Their Claim to Irreparable Harm. ...................... 24

   D.  The Public Interest Does Not Weigh in Favor of Granting the Injunction. ................... 24

CONCLUSION ........................................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

C<small>ASES</small>

*1256 Hertel Ave. Assocs., LLC v. Calloway,*
    761 F.3d 252 (2d Cir. 2014) ................................................................................. 13

*All. of Auto. Mfrs., Inc. v. Currey,*
    984 F. Supp. 2d 32 (D. Conn. 2013), *aff'd*, 610 F. App'x 10 (2d Cir. 2015) ......... 20

*Allen v. Cuomo,*
    100 F.3d 253 (2d Cir. 1996) ................................................................................. 17

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ............................................................................................. 12

*Brontel, Ltd. v. City of N.Y.,*
    571 F. Supp. 1065 (S.D.N.Y. 1983) ..................................................................... 20

*Brooklyn Brands LLC v. Lieberman,*
    No. 18-CV-7245 (LDH), 2018 WL 10246003 (E.D.N.Y. Dec. 23, 2018) .............. 24

*Buffalo Teachers Fed'n v. Tobe,*
    464 F.3d 362 (2d Cir. 2006) ................................................................................. 19

*Campaniello v. New York State Dep't of Taxation & Fin.,*
    737 F. App'x 594 (2d Cir. 2018) ............................................................................ 9

*Carnivale v. City of New York,*
    No. 17-CV-1868 (WFK), 2017 WL 5558646 (E.D.N.Y. Apr. 24, 2017), *aff'd,*
    711 F. App'x 59 (2d Cir. 2018) .............................................................................. 9

*Citibank, N.A. v. Citytrust,*
    756 F.2d 273 (2d Cir. 1985) ................................................................................. 24

*Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S.*
    *Cal.,*
    508 U.S. 602 (1993) ............................................................................................. 14

*Dandridge v. Williams,*
    397 U.S. 471 (1970) ............................................................................................. 22

*Dorce v. City of New York,*
    No. 19-CV-2216 (JGK), 2020 WL 2521320 (S.D.N.Y. May 17, 2020) ............. 9-10

*Elmsford Apartment Assocs., LLC v. Cuomo,*
    No. 20-CV-4062 (CM), 2020 WL 3498456 (S.D.N.Y. June 29, 2020) .......... *passim*

*Engquist v. Oregon Dep't of Agr.*,
553 U.S. 591 (2008)..................................................................................22

*Fed. Deposit Ins. Corp. v. Mallen*,
486 U.S. 230 (1988)..................................................................................19

*Friends of the E. Hampton Airport, Inc. v. Town of E. Hampton*,
841 F.3d 133 (2d Cir. 2016)................................................................ 23-24

*Genesis Healthcare Corp. v. Symczyk*,
569 U.S. 66 (2013)....................................................................................10

*Harmon v. Markus*,
412 F. App'x 420 (2d Cir. 2011) ..............................................................17

*Interport Pilots Agency, Inc. v. Sammis*,
14 F.3d 133 (2d Cir. 1994).......................................................................18

*Jacoby & Meyers, LLP v. Presiding Justices of the First, Second, Third & Fourth Departments, Appellate Div. of the Supreme Court of New York*,
852 F.3d 178 (2d Cir. 2017)......................................................................12

*Jado Assocs., LLC v. Suffolk Cnty. Sewer Dist. No. 4-Smithtown Galleria*,
No. CV-12-3011, 2014 WL 2944086 (E.D.N.Y. June 30, 2014) ............15

*Lingle v. Chevron U.S.A. Inc.*,
544 U.S. 528 (2005)........................................................................ 13, 15-16

*Long Island Lighting Co. v. Town of Brookhaven*,
889 F.2d 428 (2d Cir. 1989)................................................................... 9-10

*Majorica, S.A. v. R.H. Macy & Co.*,
762 F.2d 7 (2d Cir. 1985)..........................................................................24

*MLB Enterprises, Corp. v. New York State Dep't of Taxation & Fin.*,
No. 19-CV-4679 (JMF), 2020 WL 917257 (S.D.N.Y. Feb. 26, 2020).....9

*Murr v. Wisconsin*,
137 S. Ct. 1933 (2017) ..............................................................................14

*Murray v. Cuomo*,
No. 1:20-CV-03571-MKV, 2020 WL 2521449 (S.D.N.Y. May 18, 2020)..................... 23-25

*Nesbeth v. New York City Mgmt. LLC*,
No. 17 CIV. 8650 (JGK), 2019 WL 110953 (S.D.N.Y. Jan. 4, 2019)......8

*Piedmont Gardens, LLC v. LeBlanc*,
733 F. App'x 576 (2d Cir. 2018) ..............................................................10

*Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*,
    506 U.S. 139 (1993)..................................................................................................11

*Redd v. Fed. Nat'l Mortg. Ass'n (Fannie Mae)*,
    No. 19-CV-1045 (PKC), 2020 WL 1536596 (E.D.N.Y. Mar. 31, 2020) ................................7

*Riley v. Cuomo*,
    No. 217-CV-01631 (ADS) (AYS), 2018 WL 1832929 (E.D.N.Y. Apr. 16,
    2018) ......................................................................................................................11

*Rosa v. City of Syracuse*,
    No. 16-CV-1123 (LEK) (TWD), 2017 WL 4326517 (N.D.N.Y. Sept. 28,
    2017) ........................................................................................................................9

*RR Vill. Ass'n, Inc. v. Denver Sewer Corp.*,
    826 F.2d 1197 (2d Cir. 1987)...................................................................................18

*Sanitation & Recycling Indus., Inc. v. City of New York*,
    107 F.3d 985 (2d Cir. 1997).......................................................................... 19-20, 22

*United States v. Salerno*,
    481 U.S. 739 (1987)................................................................................................12

*Virgilio v. City of N.Y.*,
    407 F.3d 105 (2d Cir. 2005).....................................................................................12

## CONSTITUTIONAL PROVISIONS

Eleventh Amendment..................................................................................................11

## FEDERAL STATUTES

Coronavirus Aid, Relief, and Economic Security Act, 15 U.S.C.
    § 9058......................................................................................................................3

Tax Injunction Act, 28 U.S.C.
    § 1341...................................................................................................................2, 8

## STATE STATUTES AND ORDERS

Executive Order 202 ....................................................................................................3

Executive Order 202.8 ..........................................................................................4, 6, 21

Executive Order 202.28 ............................................................................... *passim*

Executive Order 202.48 ................................................................................................7

New York State Unified Court System Administrative Order 127/20 ..........................................5

New York State Unified Court System Administrative Order 143/20 ............................................5

SB S7919; N.Y. Exec. Law Art. 2-B § 29-a ..................................................................................3

Senate Bill 8192-B Approval Memorandum (June 30, 2020) ........................................................7

Tenant Safe Harbor Act, Chapter 127 of the Laws of New York (2020) ............................6, 7, 25

**RULES**

CPLR
   § 312-a ................................................................................................................................ 7-8

Federal Rule of Civil Procedure 12(b)(6) ...................................................................................12

Federal Rule of Civil Procedure 65 ........................................................................................ 1-2

**MISCELLANEOUS AUTHORITIES**

Michal Grinstein-Weiss, et al., *Housing hardships reach unprecedented heights
   during the COVID-19 pandemic*, The Brookings Institution (June 1, 2020) ...........................3

Andrew M. Cuomo, the Governor of the State of New York ("Governor Cuomo" or "Governor"), respectfully submits this memorandum of law in support of his motion to dismiss the complaint in this action pursuant to Rule 12 of the Federal Rules of Civil Procedure, and in opposition to Plaintiffs' request for a preliminary injunction pursuant to Rule 65.

## PRELIMINARY STATEMENT

The COVID-19 pandemic has caused an unprecedented public health and economic crisis in New York State and around the globe. Among the many potentially devastating effects of COVID-19 is the prospect that financially distressed renters will face eviction for failure to pay their rent, triggering a housing crisis during a time when staying at home has been essential. In the Spring of 2020, Governor Cuomo issued a series of Executive Orders in response to the pandemic that, among other things, placed a temporary moratorium on certain eviction proceedings for residential and commercial tenants. Apart from the temporary eviction moratorium and a provision that allowed renters to apply their security deposit toward rent payments, the Executive Orders did not otherwise alter any rights or duties between landlords and tenants. Renters still owe all rent due each month pursuant to their lease. The eviction moratorium that applies to commercial tenants will expire on August 20, 2020; the residential moratorium has been superseded by legislation and that portion of the Executive Order is no longer in effect.

Plaintiffs, owners of real estate in New York City, do not appear to question the need for a temporary eviction moratorium during the pandemic. *See* Complaint ("Compl.") ¶ 110 (ECF No. 1) (conceding that "[i]t is of tremendous importance that renters in the State receive relief from eviction during these terrible times"). They have brought this action because they object to having to pay property taxes due under State and local law, which they allege have become more burdensome as their rent collections have decreased during the pandemic. *Id*. ¶ 5. Plaintiffs allege that by enacting the eviction moratorium without also suspending the collection of property taxes

from landlords, Governor Cuomo, along with New York City Mayor Bill DeBlasio and the New York City Department of Finance (collectively, "New York City Defendants"), have violated their rights under the United States Constitution. *Id*. ¶¶ 71-114. Plaintiffs also seek a preliminary injunction pursuant to Rule 65. ECF No. 16 at 1.

The Court should dismiss Plaintiffs' Complaint for five independent reasons. First, Plaintiffs have not served Governor Cuomo with the Complaint and Summons. *See* Point I, *infra*. Second, pursuant to the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341, this Court does not have subject matter jurisdiction to entertain Plaintiffs' demand for an injunction restraining the collection of taxes due under State and local law, and the related doctrine of comity precludes relief that would interfere with New York State's administration of its tax system. *See* Point II, *infra*. Third, Plaintiffs' claims are partially moot and will become fully moot in less than two weeks. *See* Point III, *infra*. Fourth, Plaintiffs' claims will soon be barred by sovereign immunity. *See* Point IV, *infra*. Fifth, the Complaint fails to state a claim for all the reasons expressed in Chief Judge McMahon's recent Opinion in *Elmsford Apartment Assocs., LLC v. Cuomo*, No. 20-CV-4062 (CM), 2020 WL 3498456 (S.D.N.Y. June 29, 2020), which rejected a nearly identical challenge to Governor Cuomo's eviction moratorium. *See* Point V, *infra*.

Further, the Court should deny Plaintiffs' request for emergency injunctive relief because they are not clearly or substantially likely to succeed on the merits of their claim, their lack of diligence in requesting relief negates their attempt to show irreparable harm, and the public interest weighs in favor of denying the requested injunction. *See* Point VI, *infra*.

## BACKGROUND

### A. COVID-19 and the Temporary Eviction Moratorium.

The facts material to this action are largely a matter of public record and do not appear to be in dispute. On March 2, 2020, in response to the rapid spread of COVID-19, the New York State Legislature passed Senate Bill S7919, which amended the New York Executive Law to establish an enumerated list of disaster events for which the Governor would be empowered to suspend statutes or regulations and to issue directives, including an "epidemic." SB S7919; N.Y. Exec. Law Art. 2-B § 29-a. On March 7, 2020, Governor Cuomo issued Executive Order Number 202, declaring a State disaster emergency. He subsequently issued a series of additional Executive Orders in response to the pandemic and the accompanying and ever-increasing economic crisis.

Among the grave public policy challenges posed by the pandemic is the risk of a housing crisis that could exacerbate the public health and economic crises. As a result of the virus and resulting closures of businesses and public places throughout the State, unemployment rates have risen to historic levels. The rise in unemployment has threatened to create a housing crisis as financially distressed individuals lack the means to pay their rent.[1] A wave of evictions during the pandemic would be further devastating for the economy and to public health because it is critical that individuals are able to stay at home to reduce the spread of the virus. Around the country, policymakers at both the federal and state level have taken steps to provide relief to financially distressed renters, all in an effort to stem this element of the crisis.[2]

---

[1] *See, e.g.*, Michal Grinstein-Weiss, et al., *Housing hardships reach unprecedented heights during the COVID-19 pandemic*, The Brookings Institution (June 1, 2020), https://www.brookings.edu/blog/up-front/2020/06/01/housing-hardships-reach-unprecedented-heights-during-the-covid-19-pandemic/.

[2] *See, e.g.*, Coronavirus Aid, Relief, and Economic Security Act, 15 U.S.C. § 9058.

On March 20, 2020, Governor Cuomo issued Executive Order 202.8, which, among other things, halted "enforcement of either an eviction of any tenant residential or commercial, or a foreclosure of any residential or commercial property for a period of ninety days." N.Y. Exec. Order No. 202.8 (March 20, 2020) ("EO 202.8") (attached as Exhibit 1 to the Declaration of Owen T. Conroy ("Conroy Decl.")). On May 7, 2020, Governor Cuomo issued Executive Order No. 202.28, which continued the eviction and foreclosure moratorium, through August 19, 2020, for residential and commercial tenants who are eligible for unemployment insurance or benefits under State or federal law or who otherwise face financial hardship due to the COVID-19 pandemic. N.Y. Exec. Order No. 202.28 (May 7, 2020) ("EO 202.28") (Conroy Decl. Ex. 2).[3] In addition, EO 202.28 permits renters who are facing financial hardship due to the pandemic to direct their security deposit toward current or past-due rent payments, on the condition that, starting no more than 90 days after the use of the security deposit for this purpose, the renter will begin to replenish the security deposit in monthly installments. *Id.*

Neither EO 202.8 or EO 202.28 altered any other rights or duties between landlords and tenants. In fact, renters still owe all rent due each month pursuant to their lease, and may be subject to eviction for nonpayment of rent once the Order expires. *See Elmsford*, 2020 WL 3498456, at *14 ("nothing in [EO 202.28] diminishes the tenant's rental obligation by even a nickel").

---

[3] The relevant portion of EO 202.28 provides:

There shall be no initiation of a proceeding or enforcement of either an eviction of any residential or commercial tenant, for nonpayment of rent or a foreclosure of any residential or commercial mortgage, for nonpayment of such mortgage, owned or rented by someone that is eligible for unemployment insurance or benefits under state or federal law or otherwise facing financial hardship due to the COVID-19 pandemic for a period of sixty days beginning on June 20, 2020.

Moreover, the Orders did not restrict the commencement of holdover proceedings or common law breach of contract actions available to landlords. *Id.* at *4.

Access to the New York State court system to pursue eviction proceedings and other matters is currently also subject to other temporary COVID-19 restrictions issued by the Chief Administrative Judge of the New York State Unified Court System. Specifically, on June 18, 2020, the Chief Administrative Judge issued Administrative Order 127/20, which permits landlords to file a new eviction petition electronically so long as it comports with the requirements of EO 202.28; however, no eviction action may proceed to trial as long as "state and federal emergency measures addressing the COVID-19 pandemic" remain in place. Administrative Order 127/20 (Conroy Decl. Ex. 3). *See also* Administrative Order 143/20 (Conroy Decl. Ex. 4) (modifying Administrative Order 127/20, but leaving the trial restriction in place).

**B. Procedural History.**

Plaintiffs are owners of residential and commercial real estate in New York City, Compl. ¶¶ 10-13, who allege that their rent revenue has decreased by 40% since the start of the pandemic. Declaration of Robert Galpern ("Galpern Decl.") ¶ 5 (ECF No. 17). They concede that the eviction moratorium "serve[s] a legitimate public purpose during this horrific Pandemic" and agree with Governor Cuomo that "[i]t is of tremendous importance that renters in the State receive relief from eviction during these terrible times . . . ." *Id.* ¶ 110. Despite this concession, they complain about having to pay property taxes due under State and local law in the face of decreasing rent collections. *Id.* ¶ 5.

Plaintiffs allege that by enacting EO 202.28 without also suspending the collection of property taxes from landlords, Governor Cuomo and the New York City Defendants have violated their rights to procedural due process, substantive due process, and equal protection; have engaged

in a regulatory taking, in violation of the Takings Clause; and have violated the Contracts Clause. *Id.* ¶¶ 71-114.

On June 26, 2020, just three business days before their New York City property taxes were due for payment, Plaintiffs filed a motion for emergency relief. ECF No. 16. They sought a temporary restraining order and a preliminary injunction: (1) enjoining Defendants from collecting property taxes that became due on July 1, 2020; (2) from imposing penalty interest and late fees on taxes and granting Plaintiffs and other similarly situated landlords additional time to pay their taxes; and (3) barring enforcement of the eviction moratorium. *Id.*

On June 30, 2020, the Court issued an Order declining to grant a temporary restraining order against enforcement of EO 202.8 or 202.28 "[f]or substantially the reasons set forth in" *Elmsford*. ECF No. 22 at 2. The Court set a briefing schedule permitting Plaintiffs to supplement their motion for a preliminary injunction with a brief explaining "why this Court ought not to follow *Elmsford*." *Id.* On July 17, 2020, Plaintiffs filed a supplemental brief addressing *Elmsford*. ECF No. 24.

### C. Further Legislative Developments.

Further developments in the law have occurred after Plaintiffs filed their Complaint and motion for emergency relief. On June 30, 2020, the Tenant Safe Harbor Act, Chapter 127 of the Laws of New York (2020) (Conroy Decl. Ex. 5), became law. That legislation amended the Real Property Actions and Proceedings Law to prohibit evictions of residential tenants for non-payment of rent if the tenant has suffered a financial hardship during the COVID-19 pandemic and their county of residence remains subject to COVID-19 restrictions. As Governor Cuomo noted when approving the bill, any "tenant who willfully withholds rent from their landlord or who has not faced a financial hardship during the COVID-19 public health emergency" may still face any

appropriate legal action. Senate Bill 8192-B Approval Memorandum (June 30, 2020) (Conroy Decl. Ex. 6). Furthermore, "landlord[s] may still receive a monetary judgment against any tenant for any rent due but not paid during this period." *Id*.

On July 6, 2020, Governor Cuomo issued Executive Order 202.48 ("EO 202.48") (Conroy Decl. Ex. 7), which terminated the residential eviction moratorium of EO 202.28, as that portion of the Order had been superseded by the Tenant Safe Harbor Act. EO 202.48 did not terminate EO 202.28's commercial eviction moratorium, and that portion of the moratorium remains scheduled to expire on August 20, 2020.

## ARGUMENT

The Court should dismiss Plaintiffs' Complaint for five, independent reasons. Further, the Court should deny Plaintiffs' motion for a preliminary injunction.

### I. PLAINTIFFS HAVE NOT SERVED GOVERNOR CUOMO WITH THE SUMMONS AND COMPLAINT

Plaintiffs have not served Governor Cuomo with the Summons and Complaint. Plaintiffs' counsel submitted an affirmation of service stating that he served Governor Cuomo by First Class Mail on June 9, 2020, pursuant to CPLR § 312-a. ECF No. 12. The Governor's Office has no record of receiving this mailing. Conroy Decl. ¶ 2. Further, CPLR § 312-a provides that a summons and complaint served by mail must include two copies of an acknowledgment of receipt to be returned by the recipient. Service is complete only when "the signed acknowledgement of receipt is mailed or delivered to the sender." *Id*. § 312-a(b). The acknowledgment of receipt forms have not been provided or returned. Conroy Decl. ¶ 2. *See Redd v. Fed. Nat'l Mortg. Ass'n (Fannie Mae)*, No. 19-CV-1045 (PKC), 2020 WL 1536596, at *6 (E.D.N.Y. Mar. 31, 2020) (collecting

cases).[4] In its June 30, 2020 Order, the Court instructed that Plaintiffs "may serve process on defendants in the manner prescribed by New York law for serving a summons or like process on the Governor . . . ." ECF No. 22 at 3. Plaintiffs have not complied with this instruction.

While dismissal for insufficient service is normally without prejudice, "[w]here subsequent service of a complaint upon the defendant[s] would be futile, the Court need not dismiss the action against [those] defendant[s] without prejudice and may instead dismiss it with prejudice." *Nesbeth v. New York City Mgmt. LLC*, No. 17 CIV. 8650 (JGK), 2019 WL 110953, at *4 (S.D.N.Y. Jan. 4, 2019) (internal citation omitted). A dismissal with prejudice is appropriate here because the Court does not have subject matter jurisdiction to entertain Plaintiffs' claims for tax relief, their claims should be dismissed for mootness and are barred by sovereign immunity, and the Complaint fails to state a claim.

## II.  THE COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION TO ENTERTAIN PLAINTIFFS' CLAIMS FOR TAX RELIEF

Pursuant to the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341, this Court does not have subject matter jurisdiction to entertain Plaintiffs' demand for an injunction enjoining Defendants from collecting property taxes that became due on July 1, 2020, and providing Plaintiffs and all other similarly-situated landlords additional time to pay property taxes without incurring penalties or late fees. *See* June 30, 2020 Order at 2 (ECF No. 22) ("the relief sought would appear to run afoul of the" TIA). And, the related doctrine of comity compels dismissal of those demands, in any event.

---

[4] Plaintiffs' affirmation of service claims that CPLR § 312-a service was completed pursuant to unspecified "applicable laws and rules and the directives of the New York State Attorney General's Office during the current COVID-19 pandemic." ECF No. 12. While the Attorney General's Office has encouraged parties serving the *Attorney General* during the pandemic to use CPLR § 312-a personal service by mail, instead of personal service, it has not modified the requirements set forth in the CPLR with respect to service on State agencies or officials.

The TIA states: "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." This provision "is meant to strictly limit federal courts from interfering with local tax matters." *Campaniello v. New York State Dep't of Taxation & Fin.*, 737 F. App'x 594, 596 (2d Cir. 2018) (citing *Long Island Lighting Co. v. Town of Brookhaven*, 889 F.2d 428, 431 (2d Cir. 1989)). "This prohibition is jurisdictional and strips the federal courts of subject matter jurisdiction." *Id*. Because "New York offers an adequate remedy to" taxpayer challenges such as this one, the federal courts are "without jurisdiction under the TIA to grant [] any injunctive relief." *Id*.; *see also MLB Enterprises, Corp. v. New York State Dep't of Taxation & Fin.*, No. 19-CV-4679 (JMF), 2020 WL 917257, at *3 (S.D.N.Y. Feb. 26, 2020) ("For decades, courts—including the Supreme Court of the United States—have held that [New York's] procedures for judicial review provide a 'plain, speedy and efficient remedy' for purposes of the TIA.").

Pursuant to the TIA, federal district courts routinely dismiss challenges to the assessment and collection of property taxes due under New York State and local law. *See, e.g.*, *Long Island Lighting Co. v. Town of Brookhaven*, 889 F.2d 428, 431 (2d Cir. 1989); *Carnivale v. City of New York*, No. 17-CV-1868 (WFK), 2017 WL 5558646, at *2 (E.D.N.Y. Apr. 24, 2017), *aff'd*, 711 F. App'x 59 (2d Cir. 2018); *Rosa v. City of Syracuse*, No. 16-CV-1123 (LEK) (TWD), 2017 WL 4326517, at *5 (N.D.N.Y. Sept. 28, 2017).

In addition to the TIA, the "doctrine of comity 'instructs federal courts to refrain from granting relief to taxpayer-plaintiffs in suits that contest taxpayer liability in a manner that interferes with a state's administration of its tax system.'" *Dorce v. City of New York*, No. 19-CV-2216 (JGK), 2020 WL 2521320, at *9 (S.D.N.Y. May 17, 2020) (quoting *Abuzaid v. Mattox*, 726

F.3d 311, 315 (2d Cir. 2013)). This doctrine "applies more broadly than the TIA and specifically counsels against providing relief in Section 1983 claims." *Id.* at *10. *See also Piedmont Gardens, LLC v. LeBlanc*, 733 F. App'x 576, 578 (2d Cir. 2018) (holding that comity doctrine compels dismissal where the "suit seeks relief that 'risk[s] disrupting state tax administration' . . . so long as there is an adequate state law remedy") (quoting *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 417 (2010)). The comity doctrine reaches beyond the scope of the TIA by barring taxpayer claims for damages, in addition to injunctive relief. *See Long Island Lighting Co.*, 889 F.2d at 431.

Here, Plaintiffs ask the Court to issue an injunction prohibiting Defendants from collecting property taxes as due under State and local law and precluding them from charging penalties or late fees. Plaintiffs' request is plainly prohibited by the TIA and comity doctrine.

## III.    PLAINTIFFS' CLAIMS SHOULD BE DISMISSED FOR MOOTNESS

To the extent Plaintiffs have a ripe controversy at all, their request that the Court declare the temporary eviction moratorium of EO 202.28 unconstitutional and enjoin its enforcement is now moot in part, and will become fully moot in a matter of weeks. A "corollary to [the] case-or-controversy requirement is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71-72 (2013) (internal quotation omitted). Where "an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Id.*

Plaintiffs indicate that they own both residential and commercial buildings. ECF No. 17 at ¶ 2. The EO 202.28 residential eviction moratorium has been terminated by EO 202.48. The EO 202.28 commercial eviction moratorium expires on August 20, 2020. Therefore, a Court order enjoining the enforcement of the EO 202.28 residential eviction moratorium would have no

practical effect, and the same will apply to the commercial moratorium in less than two weeks.[5] Thus, in less than two weeks, Plaintiffs will not have any case or controversy against any of the Defendants, and, for this reason alone, this case must be dismissed.

## IV.    PLAINTIFFS' CLAIMS ARE BARRED BY SOVEREIGN IMMUNITY

The fact that the EO 202.28 temporary moratorium on eviction proceedings has expired in part and is about to fully expire also means that Plaintiffs' claims will soon be barred by sovereign immunity. The Eleventh Amendment completely bars claims against state officials for declaratory and injunctive relief for alleged past violations of federal law. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (Eleventh Amendment "does not permit judgments against state officers declaring that they violated federal law in the past"). Further, the Eleventh Amendment bars Plaintiffs' claim for damages against Governor Cuomo. *See, e.g*., *Riley v. Cuomo*, No. 217-CV-01631 (ADS) (AYS), 2018 WL 1832929, at *4 (E.D.N.Y. Apr. 16, 2018) ("Money damages cannot be recovered from state officers sued in their official capacities.").[6]

## V.    THE COMPLAINT FAILS TO STATE A CLAIM THAT EO 202.28 VIOLATES PLAINTIFFS' CONSTITUTIONAL RIGHTS

Because the TIA and comity doctrine bar Plaintiffs' demands for tax relief, all that remains is their request that the Court enjoin enforcement of the EO 202.28 temporary eviction moratorium as either a regulatory taking; violation of due process; violation of equal protection; or violation

---

[5] The temporary legislative residential eviction moratorium that superseded EO 202.28— the Tenant Safe Harbor Act—does not violate Plaintiffs' constitutional rights for all the same reasons discussed here. Moreover, since Plaintiffs have not challenged this legislation, that is not a question properly before the Court, and, in any event, Governor Cuomo would not be the appropriate *Ex Parte Young* defendant for such an action.

[6] While the Complaint caption states that Governor Cuomo is sued in his personal and official capacities, paragraph 15 of the Complaint clarifies that he is sued "in his official capacity exclusively." Compl. ¶ 15.

of the Contracts Clause. Plaintiffs have failed to state a plausible claim on any of these grounds, in large part for all the reasons set forth in *Elmsford*.

### A. Standard of Review.

As this Court is aware, under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed "if there are no legal grounds upon which relief may be granted." *Virgilio v. City of N.Y.*, 407 F.3d 105, 111 (2d Cir. 2005). To "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. This standard is not met, however, by "recitals of the elements of a cause of action, supported by mere conclusory statements." *Id*.

Moreover, because Plaintiffs claim that the eviction moratorium is facially invalid as to all landlords and tenants statewide, Compl. ¶¶ 52-70, their burden is heightened even further. A facial challenge is "the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). *See also Jacoby & Meyers, LLP v. Presiding Justices of the First, Second, Third & Fourth Departments, Appellate Div. of the Supreme Court of New York*, 852 F.3d 178, 187 (2d Cir. 2017) (holding that the complaint failed to state a claim "especially in light of the demanding standard that governs a facial constitutional challenge").

### B. The *Elmsford* Opinion.

In *Elmsford*, three residential landlords brought suit against Governor Cuomo and asked the Court to enjoin EO 202.28 as a violation of the Takings Clause, Due Process Clause, Contracts

Clause, and Petition Clause. 2020 WL 3498456, at *1. Judge McMahon found that the plaintiffs' challenge "turn[ed] entirely on legal issues that required no discovery and could be resolved on cross-motions for summary judgment." *Id.* After briefing and argument, the court granted Governor Cuomo's motion for summary judgment. *Id.* The facts in that case are effectively identical to this one, and Judge McMahon's opinion is dispositive as to most of Plaintiffs' claims here. Plaintiffs' supplemental memorandum of law addressing *Elmsford*, (ECF No. 24), does not offer any grounds on which *Elmsford* can be distinguished from their claims here.[7]

### C. Plaintiffs Fail to State a Regulatory Taking Claim.

The temporary moratorium on eviction proceedings at issue here is far from the type of intrusive regulation that courts have found to be a regulatory taking. The regulatory taking inquiry "aims to identify regulatory actions that are functionally equivalent to the classic taking in which government directly appropriates private property or ousts the owner from his domain." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 539 (2005). A regulatory taking occurs when "governmental regulation of private property 'goes too far' and is 'tantamount to a direct appropriation or ouster.'" *1256 Hertel Ave. Assocs., LLC v. Calloway*, 761 F.3d 252, 263 (2d Cir. 2014) (quoting *Lingle*, 544 U.S. at 537).

In determining whether a regulatory taking has occurred, courts "must remain cognizant that government regulation—by definition—involves the adjustment of rights for the public good, and that [g]overnment hardly could go on if to some extent values incident to property could not be diminished without paying for every such change in the general law." *Lingle*, 544 U.S. at 538-

---

[7] Confusingly, Plaintiffs' supplemental memorandum attempts to distinguish *Elmsford* by arguing that they "are not seeking the elimination of the Executive Orders" and, instead, "are merely asking this Court to cause the City of New York Department of Finance to delay the collection of the property taxes . . . ." ECF No. 24 at 4. To the extent that Plaintiffs are now withdrawing their request that the Court enjoin enforcement of EO 202.28, then the Court can simply dispose of their tax claims on TIA and comity grounds. *See* Part II, *supra*.

39 (internal citations omitted). "Mere diminution in the value of property, however serious, is insufficient to demonstrate a taking." *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 645 (1993) (citing cases where 75% and 92.5% diminution in value was held insufficient to establish a taking).

The Supreme Court has provided "two guidelines . . . for determining when government regulation is so onerous that it constitutes a taking." *Murr v. Wisconsin*, 137 S. Ct. 1933, 1942 (2017). First, "with certain qualifications . . . a regulation which 'denies all economically beneficial or productive use of land' will require compensation under the Takings Clause." *Id.* (quoting *Palazzolo v. Rhode Island,* 533 U.S. 606, 617 (2001)). Second, "when a regulation impedes the use of property without depriving the owner of all economically beneficial use, a taking still may be found based on 'a complex of factors,' including (1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action." *Id.* at 1943 (quoting *Palazzolo,* 533 U.S. at 617).

Moreover, because the regulatory takings analysis is necessarily fact-specific, "facial challenges brought under the Takings Clause 'face an uphill battle . . . made especially steep' when the parties seeking relief 'have not claimed . . . that [government action] makes it commercially impracticable' for them to continue business operations on their property." *Elmsford*, 2020 WL 3498456, at *9 (quoting *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 495–96 (1987)) (alterations in original). In such cases, "the only issue properly before this Court is 'whether the mere enactment of the [Order] constitutes a taking.'" *Id.* (quoting *Keystone*, 480 U.S. at 495) (alteration in original).

Here, as in *Elmsford*, Plaintiffs "have not shown that [EO 202.28] inflicts 'any deprivation significant enough to satisfy the heavy burden placed upon one alleging a regulatory taking.'" *Id.* (quoting *Keystone*, 480 U.S. at 493). That conclusion is "in line with the Second Circuit's holding that regulations altering the landlord-tenant relationships are 'not susceptible to facial constitutional analysis under the Takings Clause.'" *Id.* (quoting *W. 95 Hous. Corp. v. New York City Dep't of Hous. Pres. & Dev.*, 31 F. App'x 19, 21 (2d Cir. 2002)).

First, the character of the government action here weighs heavily against a regulatory taking claim. The question is whether the challenged government action "amounts to a physical invasion or instead merely affects property interests through some public program adjusting benefits and burdens of economic life to promote the common good." *Jado Assocs., LLC v. Suffolk Cnty. Sewer Dist. No. 4-Smithtown Galleria*, No. CV-12-3011, 2014 WL 2944086, at *6 (E.D.N.Y. June 30, 2014) (quoting *Lingle*, 544 U.S. at 538-39). Governor Cuomo has not effectively physically invaded Plaintiffs' property by enacting a temporary moratorium on eviction proceedings in the midst of a global pandemic: Plaintiffs' tenants still owe all rent due under their leases and Plaintiffs may proceed to evict those tenants who fail to pay their rent once the moratorium expires. At most, EO 202.28 delays access to one particular judicial remedy available to Plaintiffs, during a time when access to the courts is already necessarily delayed as to nearly all litigants due to courthouse closures and other public health restrictions. This type of regulation "merely affects property interests through some public program adjusting the benefits and burdens of economic life to promote the common good" and is therefore not a regulatory taking. *Lingle.*, 544 U.S. at 539. *See also Elmsford*, 2020 WL 3498456, at *11 ("[a]lthough the Order may embody a policy decision to 'take from Pete [the landlords] to pay Paul [the tenants] . . . such burden

shifting does not, without more, amount to a regulatory taking'") (quoting *Buffalo Teachers Fed'n*

*v. Tobe*, 464 F.3d 362, 376 (2d Cir. 2006)) (alterations in original).

Second, Plaintiffs have not alleged the kind or degree of economic impact necessary to support a regulatory taking claim. Plaintiffs claim that their rent revenue has decreased by 40% since the start of the pandemic. Galpern Decl. ¶ 5 (ECF No. 17). But that allegation does not suffice because "Plaintiffs provide no basis for treating the subset of their rented apartments occupied by tenants facing financial hardship as a separate parcel; nor do they claim that EO 202.28 makes it 'commercially impracticable' for them to operate their buildings as a whole—let alone every building impacted by the Order, as they must to prevail on a facial challenge." *Elmsford*, 2020 WL 3498456, at *10; *see also id*. ("even if an unspecified number of tenants are behind in their rental payments, that is not enough for Plaintiffs to prevail on a facial challenge to [EO 202.28] under the Takings Clause"). Moreover, Plaintiffs make no attempt to establish what amount of the reduction in rental income is attributable to EO 202.28, as opposed to the general effect of the financial downturn in the State caused by the pandemic. And as to those tenants who have failed to pay rent during the effective period of EO 202.28, the Executive Order does not nullify or cancel these rent obligations; it merely temporarily prevents Plaintiffs from evicting the tenants due to non-payment. Plaintiffs may, if they desire, still attempt to collect any arrears from their tenants or negotiate a resolution. In short, any economic impact on Plaintiffs is temporary and minimal, and well within the permissible "adjustment of rights for the public good" that does not constitute a regulatory taking. *Lingle*, 544 U.S. at 538.

Third, Plaintiffs have not alleged any facts to support their claim that EO 202.28 has interfered with distinct investment-backed expectations, as required by well-settled law. The purpose of this requirement "is to limit recovery to owners who could demonstrate that they bought

their property in reliance on a state of affairs that did not include the challenged regulatory regime." *Allen v. Cuomo*, 100 F.3d 253, 262 (2d Cir. 1996). Plaintiffs cannot pass this test because they chose to invest in the already heavily regulated business of New York City real estate: in this context, "the Governor did not act on a blank slate, but, rather, made temporary adjustments to a statutory scheme that has governed landlord-tenant relations in the state for some time." *Elmsford*, 2020 WL 3498456, at *10. Given the prior existence of many other rules and restrictions regarding the eviction process, EO 202.28's "temporary adjustment of those rules, which does nothing more than defer the ability of the landlord to collect (or obtain a judgment for) the full amount of the rent the tenant freely agreed to pay, does not disrupt the landlords' investment-backed expectations." *Id*. at *11.

### D. Plaintiffs Fail to State a Due Process Claim.

Plaintiffs have not stated a substantive or procedural due process claim, for four distinct reasons.

First, Plaintiffs' due process claim is duplicative of their other constitutional claims. The "Due Process Clause cannot 'do the work of the Takings Clause' because '[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Harmon v. Markus*, 412 F. App'x 420, 423 (2d Cir. 2011) (quoting *Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envtl. Prot.,* 560 U.S. 702, 721 (2010)). In *Harmon*, the Second Circuit analyzed (and rejected) the plaintiffs' Takings Clause claim, and then summarily rejected the due process claim "as a matter of law." *Id*. Because Plaintiffs' due process claim is substantively identical to their takings claim, the Court should analyze the claim under the Takings Clause standard and dismiss this claim. *See Elmsford*, 2020 WL 3498456, at *15 (holding that plaintiffs' failure to "identif[y] a property interest

independent of the interests addressed by their other constitutional claims" is "fatal to their due process claim").

Second, "EO 202.28 does not deprive Plaintiffs of their property rights" because "all that Plaintiffs complain of is the potential that they will have to wait before pursuing the remedies otherwise available to them," which is not a deprivation that implicates the Due Process Clause. *Id*. at *16.

Third, the alleged deprivation was the result of legislation and an Executive Order that is generally applicable to all property owners statewide—this government action is therefore not subject to procedural due process requirements. "Official action that is legislative in nature is not subject to the notice and hearing requirements of the due process clause." *Interport Pilots Agency, Inc. v. Sammis*, 14 F.3d 133, 142 (2d Cir. 1994). The "test for determining whether official action is adjudicative or legislative focuses on the function performed by the decisionmaker, not on the method of selecting the decisionmaker." *RR Vill. Ass'n, Inc. v. Denver Sewer Corp.*, 826 F.2d 1197, 1205 (2d Cir. 1987). Government action "is adjudicative when a decision is based on a determination of 'facts about the parties and their activities, businesses, and properties.'" *Id*. (quoting *Langevin v. Chenango Court, Inc.,* 447 F.2d 296, 300 (2d Cir. 1971)). To trigger procedural due process requirements, the action must be one that "adjudicate[s] disputed facts in particular cases . . . ." *Id*. (quoting *United States v. Florida East Coast Ry. Co.,* 410 U.S. 224, 245 (1973). *See also id*. (holding that under this standard, "a retroactive rate determination based solely on facts about one supplier is adjudicative and subject to the requirements of procedural due process"). EO 202.28 applies to all property owners statewide and is therefore an official action that is legislative in nature. Plaintiffs simply may not bring a procedural due process challenge to this action.

Fourth, Plaintiffs have not been denied due process. They have only been temporarily delayed from filing eviction proceedings for a short time during the height of the COVID-19 pandemic, and will be able to resume eviction proceedings once the moratorium expires. *Elmsford*, 2020 WL 3498456, at *16 ("the delay . . . mandated by the Order does not deny the Plaintiffs a meaningful opportunity to be heard"); *see also Fed. Deposit Ins. Corp. v. Mallen*, 486 U.S. 230, 242 (1988) (allegation that post-deprivation delay in due process must consider "the justification offered by the Government for delay and its relation to the underlying governmental interest," among other factors).

### E.  Plaintiffs Fail to State a Contracts Clause Claim.

Plaintiffs' allegations fail to plausibly state a violation of the Contracts Clause. The Contracts Clause "does not trump the police power of a state to protect the general welfare of its citizens, a power which is 'paramount to any rights under contracts between individuals.'" *Buffalo Teachers Fed'n*, 464 F.3d at 367-68 (quoting *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 240 (1978)). "Rather, courts must accommodate the Contract Clause with the inherent police power of the state 'to safeguard the vital interests of its people.'" *Id.* (quoting *Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 434 (1934)). "Thus, state laws that impair an obligation under a contract do not necessarily give rise to a viable Contracts Clause claim[.]" *Id.* Courts analyzing a Contracts Clause claim must apply a three-part test that asks: "(1) whether the contractual impairment is in fact substantial; if so, (2) whether the law serves a significant public purpose, such as remedying a general social or economic problem; and, if such a public purpose is demonstrated, (3) whether the means chosen to accomplish this purpose are reasonable and appropriate." *Sanitation & Recycling Indus., Inc. v. City of New York*, 107 F.3d 985, 993 (2d Cir. 1997). Plaintiffs have not alleged facts that establish these elements.

First, Plaintiffs have not alleged a substantial impairment. "The primary consideration in determining whether the impairment is substantial is the extent to which reasonable expectations under the contract have been disrupted." *Id*. Where "the industry has been heavily regulated, and regulation of contracts is therefore foreseeable, a party's ability to prevail on its Contract Clause challenge is greatly diminished." *All. of Auto. Mfrs., Inc. v. Currey*, 984 F. Supp. 2d 32, 54 (D. Conn. 2013), *aff'd,* 610 F. App'x 10 (2d Cir. 2015), and *aff'd,* 610 F. App'x 10 (2d Cir. 2015). New York's real estate industry is certainly heavily regulated: an extensive body of law exists to govern the relationship between landlords and tenants, with regulations regarding the eviction process being areas of particular focus. *See Elmsford*, 2020 WL 3498456, at *4. Some government action creating further delay in an already highly regulated, carefully paced eviction process is therefore not "wholly unexpected." *Sanitation & Recycling Indus.*, 107 F.3d at 993. Moreover, any impairment of Plaintiffs' contractual rights is not substantial because the eviction moratorium is limited in duration, does not waive any rent due by tenants, and enables Plaintiffs to recoup unpaid rent and recover security deposits. *See Elmsford*, 2020 WL 3498456, at *15 ("The eviction moratorium does not eliminate the suite of contractual remedies available to the Plaintiffs; it merely postpones the date on which landlords may commence summary proceedings against their tenants."). This limited impairment is far less substantial than other laws affecting the real estate industry that courts have repeatedly upheld. *See, e.g*., *Brontel, Ltd. v. City of N.Y.*, 571 F. Supp. 1065, 1072 (S.D.N.Y. 1983) (rejecting Contract Clause challenge to New York City rent control laws). Plaintiff's assertion that EO 202.28 has "shut [them] down and prevents them from fulfilling present contracts or engaging in new ones," ECF No. 18 at 11, is unfounded and at odds with the actual content of the Order.

Second, EO 202.28 serves a significant public purpose. It provides temporarily relief from eviction to financially distressed renters during an unprecedented global pandemic and an associated economic crisis. Governor Cuomo took this action to help stem a burgeoning housing crisis that would have further exacerbated the ongoing public health crisis. A wave of evictions during the height of the pandemic would have been exceedingly dangerous because it is essential that individuals be able to shelter at home to reduce the spread of the virus. Plaintiffs do not seriously dispute these points. In fact, the Complaint expressly concedes that "the [Executive] Order(s) and moratoriums serve a legitimate public purpose during this horrific Pandemic," and further states that "[i]t is of tremendous importance that renters in the State receive relief from eviction during these terrible times . . . ." Compl. ¶ 110. Plaintiffs' grievance is not that EO 202.28 lacks a significant public purpose; it is that the Order did not go even further and also grant Plaintiffs relief from their tax obligations. *Id*. This admission defeats Plaintiffs' Contracts Clause claim.

Third, the means utilized by EO 202.28 to accomplish its goals are reasonable and appropriate. The eviction moratorium is limited in duration, as it aimed to stem a potential wave of evictions during the height of the pandemic in New York. Other than the temporary eviction moratorium and its provision regarding security deposits, EO 202.28 does not otherwise alter any rights or duties between landlords and tenants. Renters still owe all rent due each month pursuant to their lease. Further, Governor Cuomo has narrowed the scope of the eviction moratorium over time. The first version of the moratorium, EO 202.8, halted enforcement of evictions for all residential and commercial tenants. EO 202.28 then permitted some evictions to proceed, while continuing relief for tenants who are eligible for unemployment insurance or benefits under State or federal law or who otherwise face financial hardship due to the COVID-19 pandemic. And once

legislation superseded EO 202.28's residential eviction moratorium, Governor Cuomo terminated that part of the Order altogether.

Finally, EO 202.28 also provided relief for property owners by halting mortgage foreclosures. Plaintiffs' claim that Governor Cuomo "totally forgot about and left out thousands of property owners," Compl. ¶ 5, is simply wrong. While Plaintiffs may prefer that Governor Cuomo had chosen some different combination of relief, the means chosen are reasonable and appropriate to serve the critical public purpose they are intended to address. See *Sanitation & Recycling Indus.*, 107 F.3d at 993.

### F.  Plaintiffs Fail to State an Equal Protection Claim.

The premise of Plaintiffs' equal protection claim appears to be that the New York City Defendants engaged in an impermissible classification by providing tax relief to owners of three-family or smaller homes. Compl. ¶ 89. This claim is not directed at Governor Cuomo, who has no role in this local program. However, Plaintiffs are not in any event substantially likely to establish an equal protection claim on these allegations, which fail to allege constitutionally impermissible "arbitrar[y] classif[ication]" or "singl[ing] out." *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 601 (2008). *See also Dandridge v. Williams*, 397 U.S. 471, 485 (1970) ("In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.'") (quoting *Lindsley v. Natural Carbonic Gas Co*., 220 U.S. 61, 78 (1911)).

## VI.    PLAINTIFFS ARE NOT ENTITLED TO A PRELIMINARY INJUNCTION

In addition to having failed to state any plausible claim for relief, Plaintiffs are not entitled to the preliminary injunction they seek.

### A.  Standard of Review.

"Preliminary injunctive relief . . . is an 'extraordinary and drastic remedy' that is 'unavailable except in extraordinary circumstances.'" *Murray v. Cuomo*, No. 1:20-CV-03571-MKV, 2020 WL 2521449, at *8 (S.D.N.Y. May 18, 2020) (quoting *Moore v. Consol. Edison Co.*, 409 F.3d 506, 511 (2d Cir. 2005)). Where "a preliminary injunction 'will affect government action taken in the public interest pursuant to a statute or regulatory scheme,' the moving party must demonstrate (1) irreparable harm absent injunctive relief, (2) a likelihood of success on the merits, and (3) public interest weighing in favor of granting the injunction." *Friends of the E. Hampton Airport, Inc. v. Town of E. Hampton*, 841 F.3d 133, 143 (2d Cir. 2016) (quoting *Red Earth LLC v. United States*, 657 F.3d 138, 143 (2d Cir. 2011)). Further, where a plaintiff "seeks a mandatory injunction against the government that would change the status quo existing when the case was filed," a heightened standard applies in which the plaintiff "must show a 'clear' or 'substantial' likelihood of success on the merits." *Murray*, 2020 WL 2521449, at *8 (quoting *Thomas v. New York City Bd. Of Elections*, 898 F. Supp. 2d 594, 597 (S.D.N.Y. 2012)).

### B.  Plaintiffs Have Not Established a Clear or Substantial Likelihood of Success on the Merits.

Plaintiffs' request is for a mandatory injunction because they seek to change the status quo: Specifically, they ask the Court to prematurely terminate the eviction moratorium and enable them to immediately begin evicting renters who are currently protected by EO 202.28. Plaintiffs therefore must satisfy the heightened standard of clear or substantial likelihood of success on the

merits. Plaintiffs have not established a clear or substantial likelihood of success as to any of their causes of action, for all the reasons addressed in Part V, *supra*.

### C. Plaintiffs' Lack of Diligence Negates Their Claim to Irreparable Harm.

The standard in this Circuit is that "alleged constitutional violations presumptively constitute irreparable harm." *Murray*, 2020 WL 2521449, at *9 (citing *Connecticut Dep't of Envtl. Prot. v. O.S.H.A.*, 356 F.3d 226, 231 (2d Cir. 2004)). However, a plaintiff's lack of diligence in filing the action and seeking injunctive relief can negate the attempted showing of irreparable harm. "Lack of diligence, standing alone, may . . . preclude the granting of preliminary injunctive relief, because it goes primarily to the issue of irreparable harm . . . ." *Majorica, S.A. v. R.H. Macy & Co.*, 762 F.2d 7, 8 (2d Cir. 1985). *See also Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985) ("Delay in seeking enforcement of those rights, however, tends to indicate at least a reduced need for such drastic, speedy action."); *Brooklyn Brands LLC v. Lieberman*, No. 18-CV-7245 (LDH), 2018 WL 10246003, at *1 (E.D.N.Y. Dec. 23, 2018) (denying emergency relief where plaintiff "waited no less than six but as much as fifteen weeks to seek emergency relief from the Court—and then did so on the eve of a major holiday weekend").

Here, Plaintiffs challenge an eviction moratorium that was first issued on March 20, 2020. They waited eleven weeks, until June 4, 2020, to file their Complaint. Plaintiffs then waited an additional three weeks, until the afternoon of Friday, June 26, 2020, to file their motion for "emergency" relief. By that time, the property tax deadline they ask the Court to delay was just three business days away. This lack of diligence negates their attempt to show irreparable harm.

### D. The Public Interest Does Not Weigh in Favor of Granting the Injunction.

Plaintiffs have not demonstrated that the "public interest weigh[s] in favor of granting the injunction." *Friends of the E. Hampton Airport,* 841 F.3d at 143. Granting the injunction they request here would mean that Plaintiffs would immediately be able to begin evicting commercial

tenants,[8] in advance of the August 20, 2020 expiration of the eviction moratorium. Plaintiffs make no attempt to grapple with the public harms that would be triggered by accelerating the eviction schedule as to those tenants. By contrast, the harm to Plaintiffs of waiting until the eviction moratorium expires on August 20, 2020, is minimal and reasonable. *See Murray*, 2020 WL 2521449, at *13 ("in light of the facts of this case, the state's (and public's) compelling interest in controlling the spread of a fatal pandemic outweighs any burden on Plaintiff's interest in her name appearing on the ballot").

## CONCLUSION

For the reasons set forth above, Governor Cuomo respectfully requests that the Court grant his motion to dismiss and deny Plaintiffs' motion for a preliminary injunction.

Dated: New York, New York
   August 7, 2020

            Respectfully submitted,

            LETITIA JAMES
            Attorney General
            State of New York
            *Attorney for Governor Cuomo*

            By: /s/ Owen T. Conroy
            Owen T. Conroy
            Assistant Attorney General
            28 Liberty Street
            New York, New York 10005
            Tel.: (212) 416-6382
            Email: Owen.Conroy@ag.ny.gov

---

[8] As discussed above, the Tenant Safe Harbor Act has superseded EO 202.28's eviction moratorium for residential tenants.